Oakwood Acceptance Corporation is the defendant in two actions pending in the Bessemer Division of the Jefferson Circuit Court. The plaintiff in one case is David Hobbs and the plaintiffs in the other case are Pearl Sims and Danny Sims. Oakwood Acceptance moved in each case to compel arbitration of the plaintiffs' claims. The court denied the motions to compel arbitration. Oakwood Acceptance appeals from the orders denying those motions. We reverse those orders.
 I.
Because of the posture of these cases and the very limited discovery conducted by the parties below, we must rely on the plaintiffs' verified complaints (which are substantively the same) for a statement of the facts. Hobbs alleges that on December 14, 1997, he entered into a written contract, entitled "Manufactured Home Installment Sale Contract Alabama," with Oakwood Mobile Homes, Inc. ("Oakwood Homes"), for the purchase of a mobile home. Similarly, the Simses allege that on August 22, 1997, they entered into a written contract, entitled "Manufactured Home Installment Sale Contract Alabama," with Oakwood Homes for the purchase of a mobile home. Neither of those written contracts appears in the record on appeal.
Hobbs and the Simses allege that as part of the transactions with Oakwood Homes, they each signed an arbitration agreement. Hobbs alleges in his complaint:
 "The Plaintiff avers that, at the time he entered into the contract with Oakwood Mobile Homes, Inc.[,] he and Oakwood Mobile Homes agreed, by written agreement, to arbitrate certain disputes. A copy of said written `Arbitration Agreement' is attached hereto as Exhibit A."
The Simses allege in their complaint:
 "The Plaintiffs aver that, at the time they entered into the contract with Oakwood Mobile Homes, Inc., they believe that they agreed, by written agreement, to arbitrate certain disputes. A copy of an `Arbitration Agreement' that was given to the Plaintiffs following the closing of the sale to them of said Mobile Home is attached hereto as Exhibit A. The Plaintiffs do not know if they signed the Arbitration Agreement."
A copy of an arbitration agreement is attached to Hobbs's complaint, and a copy is attached to the Simses' complaint; those copies are identical. The arbitration agreement in each case reads, in pertinent part:
 "This Arbitration Agreement (`Agreement') is executed contemporaneously with, and as an inducement and consideration for, an installment or sales contract (`Contract') for the purchase of a manufactured home (`Home') as described in the Contract by the purchaser(s) (`Purchaser') with Oakwood Mobile Homes Inc. DBA OAKWOOD MOBILE HOMES INC. (`Retailer'). . . . . This Agreement is binding on and inures to the benefit of the Purchaser, the Retailer, and their successors and assigns. This Agreement is also for the benefit of the manufacturer, and any entity providing financing and their successors and assigns, who may elect to submit any dispute covered by this Agreement to binding arbitration. . . .
 "All claims, disputes and controversies arising out of or relating in any way to the sale, purchase, or occupancy of the Home or of any goods or insurance products offered or sold in connection *Page 850 
with the contract, or arising out of the financing of the Home, including but not limited to any negotiations between the parties, the design, construction, performance, delivery, condition, installation, financing, repair or servicing of the Home, including claims for equitable relief or claims based on contract, tort, statute, warranty, or any alleged breach, default, negligence, wantonness, fraud, misrepresentation, suppression of fact, or inducement, will to the fullest extent permitted by Federal law be resolved by binding arbitration administered by the American Arbitration Association (`AAA') under its Commercial Arbitration Rules. Notwithstanding the above, no act to take or dispose of collateral securing payments under the Contract, (including without limitation the exercise of any rights under a mortgage, deed of trust or security interest, with or without judicial process, or obtaining a writ of attachment or sequestration), shall be subject to this Arbitration Agreement. Any challenges to the validity or enforceability of this Agreement shall be determined by the arbitrator(s). . . . .
 "This Agreement is an election to resolve claims, disputes, and controversies by arbitration rather than the judicial process. IT IS UNDERSTOOD THAT THE PARTIES WAIVE ANY RIGHT TO A JURY TRIAL OR A TRIAL IN COURT. . . ."
(Capitalization in original.)
Hobbs and the Simses allege that Oakwood Acceptance has advised each of them that it has "acquired the interest that Oakwood Mobile Homes, Inc., held in the Manufactured Home Installment Sale Contract Alabama," but they deny owing any debt to Oakwood Acceptance. Oakwood Acceptance, however, alleges in its motions to compel arbitration that it financed both Hobbs and the Simses' purchases of their mobile homes.
On September 20, 1999, Hobbs and the Simses each filed a two-count verified complaint, naming only Oakwood Acceptance as a defendant. In Count One, the plaintiffs allege that Oakwood Acceptance invaded their privacy by making "harassing" and "threatening" collection and repossession efforts. In Count Two, the plaintiffs seek a temporary restraining order to enjoin Oakwood Acceptance from continuing its collection efforts and from continuing any action to repossess the mobile homes. On September 22, the trial court entered a TRO in each action, restraining Oakwood Acceptance from continuing its collection efforts, except through the judicial process, and from continuing any action to repossess the mobile homes.
Thereafter, in each action Oakwood Acceptance moved to compel arbitration. In each case, in support of its motion, Oakwood Acceptance offered only the arbitration agreement. Neither Hobbs nor the Simses filed a response to Oakwood Acceptance's motion. The trial court held a hearing on Oakwood Acceptance's motions to compel arbitration, and on the date of the hearing Oakwood Acceptance filed in each case the affidavit of William H. Gifford, Jr., Oakwood Acceptance's director of litigation. Gifford's affidavit states, in relevant part, that the plaintiffs entered into the arbitration agreements and that, in each case, "the mobile home made the basis of [the action] was sold through and shipped through interstate commerce to the [S]tate of Alabama." In each case, the trial court, acting pursuant to an agreement by the parties, dismissed the TRO, but denied Oakwood Acceptance's motion to compel arbitration of the invasion-of-privacy claim. In denying the arbitration motions, the trial court relied on the second sentence of the second paragraph of *Page 851 
the arbitration agreement. That sentence reads:
 "Notwithstanding the above, no act to take or dispose of collateral securing payments under the Contract, (including without limitation the exercise of any rights under a mortgage, deed of trust or security interest, with or without judicial process, or obtaining a writ of attachment or sequestration), shall be subject to this Arbitration Agreement."
The trial court concluded, based on this sentence, that the plaintiffs' invasion-of-privacy claims are not within the scope of the arbitration agreement. In each case, it stated in its order, (noted on the case action summary):
 "This provision would exempt by the defendant's own language the activity claimed under Count 1 of the complaint. Those activities would be acts to take collateral (the trailer) covered or securing the loan. The motion to arbitrate is denied as not coming within the agreement to arbitrate."
 II.
A direct appeal is the proper procedure by which to seek review of a trial court's order denying a motion to compel arbitration. Homes ofLegend, Inc. v. McCollough, 776 So.2d 741 (Ala. 2000). This Court reviews de novo a trial court's denial of a motion to compel arbitration. Id.
The plaintiffs do not dispute that their contracts involve interstate commerce, that they entered into arbitration agreements, or that the arbitration agreements are subject to the Federal Arbitration Act, 9 U.S.C. § et seq. Instead, the plaintiffs argue that Oakwood Acceptance has no standing to enforce the arbitration agreements and that, even if Oakwood Acceptance does have standing, the scope of the arbitration agreements does not extend to their invasion-of-privacy claims against Oakwood Acceptance.
 A. Standing to Enforce the Arbitration Agreement
The plaintiffs contend that Oakwood Acceptance presented no evidence indicating that it had been assigned the purchase contract and arbitration agreement between the plaintiffs and Oakwood Homes. Oakwood Acceptance contends that this Court should not address the merits of this argument because the plaintiffs did not present it to the trial court.
The plaintiffs may make in support of the trial court's judgment an argument not made to the trial court, see Smith v. Equifax Servs., Inc.,537 So.2d 463, 465 (Ala. 1988); therefore, we may consider the merits of the plaintiffs' contention that Oakwood Acceptance cannot enforce the arbitration agreement between the plaintiffs and Oakwood Homes. The efficacy of that contention depends on the language of the agreement. "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, . . . so the question `who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." First Options of Chicago,Inc. v. Kaplan, 514 U.S. 938, 943 (1995).
Moreover, "[w]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." Id. at 944. "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is `clea[r] and unmistakabl[e]' evidence that they did so." Id. at 944. See also ATT Technologies, Inc.v. Communications Workers of *Page 852 America, 475 U.S. 643 (1986). In each of the two cases now before us, the arbitration agreement clearly provides that "[a]ny challenges to the validity or enforceability of this Agreement shall be determined by the arbitrator(s)." Therefore, whether Oakwood Acceptance has standing to enforce the arbitration agreement between Oakwood Homes and the plaintiffs is a question that must be decided by the arbitrator.
 B. Scope of the Arbitration Agreement
The plaintiffs argue that, based on the language of the arbitration agreement — providing that "no act to take or dispose of collateral securing payments under the Contract, . . . shall be subject to this Arbitration Agreement" — their invasion-of-privacy claims are outside the scope of the arbitration agreement. We do not agree that this language excepts the plaintiffs' invasion-of-privacy claims from the scope of the arbitration agreement.
In applying general Alabama rules of contract interpretation to the language of an arbitration agreement subject to the Federal Arbitration Act ("FAA"), this Court must, in accordance with the federal substantive law on arbitration, resolve any ambiguities as to the scope of the arbitration agreement in favor of arbitration. See Moses H. Cone Mem'lHosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) (§ 2 of the FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act" and "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,473 U.S. 614, 626 (1985) (in construing an arbitration agreement within the coverage of the FAA, "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability"); Volt Information Sciences, Inc. v. Board ofTrustees of Leland Stanford Junior Univ., 489 U.S. 468, 475 (1989) ("in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration" (citation omitted)); see also Homes of Legend,Inc. v. McCollough, supra. The plaintiffs' invasion-of-privacy claims are based on allegations concerning Oakwood Acceptance's efforts to collect the indebtedness that Oakwood Acceptance contends the plaintiffs owe and that the plaintiffs deny they owe, and its efforts to repossess the mobile homes.
Oakwood Acceptance argues that the plaintiffs' tort claims are subject to the arbitration agreement because the language of the arbitration agreement specifically includes "claims based on . . . tort" and because those claims arise out of and relate "in any way" to the "occupancy of the home" and the "financing of the home." The plaintiffs argue that their invasion-of-privacy claims are specifically excluded from the general arbitration clause because, they say, those claims are based on Oakwood Acceptance's actions "to take . . . [the] collateral securing payments under the Contract," that is, the mobile homes. To the extent the language of the second sentence in the second paragraph of the arbitration agreement is susceptible to more than one reasonable construction, it is ambiguous. See McCollough, 776 So.2d at 746. However, in construing ambiguities *Page 853 
as to the scope of an arbitration agreement, we are required to resolve those ambiguities in favor of arbitration. Accordingly, we conclude that the plaintiffs' claims fall within the scope of the arbitration agreement, and, thus, must be submitted to arbitration.
 III.
We conclude that the trial court erred in denying Oakwood Acceptance's motions to compel arbitration. Therefore, we reverse the trial court's orders and remand these cases for the trial court to enter orders consistent with this opinion.
1990999 — REVERSED AND REMANDED.
1991000 — REVERSED AND REMANDED.
Hooper, C.J., and Maddox, Houston, Lyons, and Brown, JJ., concur.
Johnstone, J., concurs in part and dissents in part.
England, J., dissents.