H S Homes, L.L.C., whose business is selling manufactured homes, and Russ D'Olympio, the general manager of H S, are defendants in an action filed by Christina L. McDonald in the Montgomery Circuit Court. McDonald appeals from the trial court's May 9, 2002, order setting aside the selection of an arbitrator. We reverse and remand.
 Facts and Background
On January 28, 2000, McDonald contracted to purchase a manufactured home from H S. At the time of this purchase, McDonald signed a "retail installment contract and security agreement" ("the installment contract"). The installment contract named GreenPoint Credit, L.L.C., as the assignee. The installment contract contained the following arbitration provision:
"ARBITRATION OF DISPUTES AND WAIVER OF JURY TRIAL:
 "a. Dispute Resolution. Any controversy or claim between or among you and me or our assignees arising out of or relating to this Contract or any agreements or instruments relating to or delivered in connection with this Contract, including any claim based on or arising from an alleged tort, shall, if requested by either you or me, be determined by arbitration, reference, or trial by a judge as provided below. . . .
 "b. Arbitration. Since this Contract touches and concerns interstate commerce, an arbitration under this Contract shall be conducted in accordance with the United States Arbitration Act (Title 9, United States Code), notwithstanding any choice of law provision in this Contract. The Commercial Rules of the American Arbitration Association (`AAA') also shall apply. . . ." *Page 922 
Simultaneously with the signing of the installment contract, McDonald executed a purchase contract with H S; the purchase contract referenced and incorporated a separate "stand-alone" arbitration agreement. That arbitration agreement provided, in part:
 "All disputes, claims, or controversies arising from or relating to the Contract or the relationships which result from the Contract, or the validity of this arbitration clause or the entire Contract, shall be resolved by binding arbitration by one arbitrator selected by Assignee with consent of Buyer(s). . . .
". . . .
 "The parties agree and understand that all disputes arising under case law, statutory law, and all other laws, including, but not limited to, all contract, tort and property disputes, will be subject to binding arbitration [in] accord with this Contract. The parties agree and understand that the arbitrator shall have all powers provided by the law and the Contract."
D'Olympio, on behalf of H S, and McDonald signed this arbitration agreement; the agreement was incorporated by reference into McDonald's purchase contract with H S.[1]
On February 26, 2001, McDonald filed this action against H S and D'Olympio. In her complaint, McDonald alleged fraud, suppression, misrepresentation, deceit, negligence, wantonness, and conversion arising out of her purchase transaction.
H S and D'Olympio filed motions to compel arbitration. Those motions were supported with briefs and evidentiary submissions, which established that McDonald signed the arbitration agreement and the installment contract containing an arbitration provision, and that her purchase of the manufactured home substantially affected interstate commerce. The trial court granted H S and D'Olympio's motions to compel arbitration, ordering McDonald to arbitrate her claims.
On July 26, 2001, McDonald filed with the trial court a motion for clarification. In her motion, McDonald pointed out that she had signed two arbitration provisions in connection with her purchase of the mobile home and that the parties could not agree which provision controlled this dispute. McDonald asked the trial court for guidance as to which arbitration provision governed.
On October 3, 2001, the trial court issued its order finding that the stand-alone arbitration agreement and the installment contract containing an arbitration provision had been executed on the same date, were part of a continuing transaction, and should be read and construed "as if in one form." The trial court concluded its order by stating, "[I]t is hereby ORDERED that [McDonald] shall comply with the provisions contained in the Retail Installment Contract." Neither McDonald, H S, nor D'Olympio appealed from this order.
Sometime after that order was entered, McDonald's counsel contacted the attorney for GreenPoint Credit, the assignee of the installment contract. Without providing notice to H S or D'Olympio, the attorneys for McDonald and GreenPoint Credit mutually agreed that attorney Kenneth Mendelsohn would be the arbitrator for this dispute. Upon receiving notice that Mendelsohn had been appointed as arbitrator, H S and D'Olympio objected, asserting that he had not been appointed pursuant to the procedures specified in the *Page 923 
installment contract. On April 30, 2002, H S moved the trial court to set aside as invalid McDonald and GreenPoint's selection of Mendelsohn as the arbitrator. On May 9, 2002, the trial court entered an order reading, in part, as follows:
 "1. That the parties, Christina McDonald and H S Homes, L.L.C. shall select an arbitrator in accordance with the Rules of [the] American Arbitration Association.
 "2. That the selection of an arbitrator by the assignee is due to be and is hereby set aside."
McDonald filed a motion pursuant to Rule 59(e), Ala.R.Civ.P., asking the trial court to alter, amend, or vacate its May 9, 2002, order. The trial court denied this motion.
McDonald appeals from the trial court's May 9, 2002, order setting aside the selection of Kenneth Mendelsohn as the arbitrator. We reverse and remand.
 Standard of Review
"This Court's review of an order granting a motion to compel arbitration is de novo." BankAmerica Housing Servs. v. Lee, 833 So.2d 609,617 (Ala. 2002). The order appealed from in this case is not an order compelling arbitration; it is, however, an order interpreting an arbitration provision.[2] "When a trial court compels arbitration, it must do so in a manner consistent with the terms of the arbitration provision." BankAmerica Housing Servs., 833 So.2d at 618.
We consider the issue on appeal to be whether the trial court has properly interpreted and applied the parties' arbitration agreements. Arbitration agreements are governed by general principles of contract law. Oakwood Acceptance Corp. v. Hobbs, 789 So.2d 847 (Ala. 2001). The interpretation of an unambiguous contract provision is a question of law, which we review de novo. See, e.g., Sharer v. Creative Leasing,Inc., 612 So.2d 1191 (Ala. 1993). For these reasons, we conclude that the appropriate standard of review in this case is de novo.
 Analysis
McDonald asserts that the trial court's order of May 9, 2002, setting aside the appointment of Mendelsohn as the arbitrator must be reversed. McDonald asserts that Mendelsohn was appointed in a manner fully consistent with the trial court's October 3, 2001, order, in which the trial court ordered that the arbitration agreement and the arbitration provision in the installment contract be read and construed as if in one agreement and that McDonald comply with the provisions of the installment contract.
First, McDonald asserts that because neither party appealed the trial court's order of October 3, 2001, ordering that the two arbitration provisions be read as if in one agreement, that order became the "law of the case"; therefore, she argues, the terms of the stand-alone arbitration agreement may not be ignored or disregarded. McDonald also cites Rule R-13 of the Commercial Rules of the American Arbitration Association (the "AAA"), which provides, in pertinent part: "If the parties have not appointed an arbitrator and have not provided any other method of appointment, the arbitrator shall be appointed in the following manner. . . ." McDonald argues that the parties to this dispute, H *Page 924 
S and McDonald, have provided another method of appointment in their arbitration agreements, i.e., that McDonald and the assignee of H 
S, GreenPoint Credit, would mutually select the arbitrator. Because Mendelsohn was selected in this manner, McDonald asserts that the trial court's order setting aside Mendelsohn's appointment must be reversed.
H S and D'Olympio respond that the trial court's order setting aside Mendelsohn's appointment must be affirmed because, they argue, the trial court found that McDonald had violated its earlier order and the May 9, 2002, order was a proper exercise of the trial court's inherent authority to protect the integrity of, and ensure compliance with, its earlier order. H S and D'Olympio argue that by ordering McDonald to comply with the provisions of the installment contract, the trial court intended McDonald to abide by only the Commercial Rules of the AAA, to the exclusion of the provisions set forth in the stand-alone arbitration agreement for the appointment of an arbitrator. H S and D'Olympio argue that, because McDonald defied the trial court's order, the trial court properly exercised its inherent authority to set aside McDonald's offending act.
First, we note that the trial court's order of October 3, 2001, specifically found that both the stand-alone arbitration agreement and the arbitration provision in the installment contract should be read together and should be construed as if combined in one document. If those agreements are read together as if contained in one "consolidated arbitration agreement," the resulting agreement between H S and McDonald would read, in part:
 "Any controversy or claim between or among you and me or our assignees arising out of or relating to this Contract or any agreements or instruments relating to or delivered in connection with this Contract, . . . shall be determined by arbitration. . . as provided below.
". . . The Commercial Rules of the AAA also shall apply.
 "All disputes, claims, or controversies arising from or relating to the Contract or the relationships which result from the Contract, or the validity of this arbitration clause or the entire Contract shall be resolved by binding arbitration by one arbitrator selected by Assignee with consent of Buyer(s)."
Second, we note that H S and McDonald are parties to all of the agreements at issue in this dispute; those agreements specifically identify GreenPoint Credit as the assignee.
Next, we note that Rule R-13 of the Commercial Rules of the AAA states, in part:
"R-13. Appointment From Panel
 "If the parties have not appointed an arbitrator and have not provided any other method of appointment, the arbitrator shall be appointed in the following manner. . . ."
The procedure set forth in the Commercial Rules of the AAA for selecting an arbitrator is applicable only when the parties have not appointed an arbitrator and when the parties have not provided another method for the appointment of an arbitrator.
In this case, the parties have established a method for appointing an arbitrator. At the time McDonald purchased the manufactured home from H S, H S and McDonald agreed as follows:
 "All disputes, claims, or controversies arising from or relating to the Contract or the relationships which result from the Contract, or the validity of this arbitration clause or the entire Contract, shall be resolved by binding arbitration by one arbitrator selected by Assignee with consent of Buyer(s). . . ." *Page 925 
Because the parties to this dispute have provided a method for appointing an arbitrator and because Mendelsohn was appointed pursuant to that agreed-upon method, we find that McDonald has complied with the trial court's October 3, 2001, order. McDonald has read and construed the stand-alone arbitration agreement and the arbitration provision in the installment contract as if contained in one document, and McDonald has followed the procedures set forth in the Commercial Rules of the AAA.
 "A trial court's order compelling arbitration that changes the terms of the arbitration provision will be reversed when
 "`it appears that the trial court, although it ordered the parties to arbitrate, failed to compel arbitration in a manner consistent with the terms of [the] arbitration provision.'"
BankAmerica Housing Servs., 833 So.2d at 618, quoting Southern EnergyHomes Retail Corp. v. McCool, 814 So.2d 845, 849 (Ala. 2001). See also Exparte Cappaert Manufactured Homes, 822 So.2d 385, 387 (Ala. 2001) ("[section] 5 [of the Federal Arbitration Act] mandates that the method set forth in the arbitration agreement be followed").
Because the trial court's May 9, 2002, order directs the parties to select an arbitrator in a manner that is inconsistent with the terms of the parties' agreement to arbitrate, we reverse that order. We remand this cause to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
Moore, C.J., and See, Brown, and Harwood, JJ., concur.
[1] In their brief to this Court, H S and D'Olympio refer to this arbitration agreement as the "Lender Arbitration Agreement." However, the document is entitled simply "Arbitration Agreement"; the term "lender" is not found anywhere in that agreement.
[2] H S and D'Olympio assert that the trial court's May 9, 2002, order was, in essence, a finding of civil contempt against McDonald for violating the trial court's earlier instruction to comply with the provisions of the installment contract. H S and D'Olympio argue that, therefore, the applicable standard of review is whether the trial court abused its discretion. Because we do not agree that the trial court found McDonald in civil contempt in its May 9, 2002, order, we reject this argument.