855 So.2d 1031 (2003)
Ex parte David WEBB.
(In re David Webb v. William E. Penney, Sr.)
1000651.
Supreme Court of Alabama.
February 21, 2003.
*1032 Duane F. Gordon, Huntsville, for petitioner.
George W. Royer, Jr., Jeffrey T. Kelly, and Kenneth D. Graves of Lanier Ford Shaver & Payne, P.C., Huntsville, for respondent.
JOHNSTONE, Justice.
Petitioner-plaintiff David Webb petitions this Court for a writ of mandamus directing Judge Bruce E. Williams of the Madison County Circuit Court to vacate his order compelling Webb to arbitrate his claims against defendant William E. Penney, Sr.[1] We grant the petition and issue the writ.
*1033 On December 7, 1999, Webb signed an application for employment with Bill Penney Motor Company, Inc. That application contained an arbitration provision:
"I UNDERSTAND THAT IT IS A CONDITION OF MY EMPLOYMENT WITH THIS COMPANY THAT I AGREE TO SETTLE ANY DISPUTE ARISING OUT OF MY EMPLOYMENT THROUGH BINDING ARBITRATION RATHER THAN THROUGH A LAWSUIT, AND THAT BY ACCEPTING EMPLOYMENT WITH THIS COMPANY I AM WAIVING MY RIGHT TO A JURY TRIAL IN THESE MATTERS." (Capitalization original.)
As a condition of employment with Bill Penney Motor Company, Webb signed a separate document entitled "ALTERNATIVE DISPUTE RESOLUTION AGREEMENT BY BINDING ARBITRATION," which states:
"EMPLOYER: BILL PENNEY MOTOR COMPANY INC.
"EMPLOYEE: David G. Webb
"The Employer and the Employee mutually covenant, stipulate and agree, in connection with the Employer's employment of the employee and the resolution of any dispute arising out of such employment, as follows: That the Employer operates a business which involves and effects [sic] interstate commerce. That the Employee's activities while engaged by the Employer will involve and effect [sic] interstate commerce. Accordingly, the Employer and the Employee mutually agree that all disputes not barred by applicable statute of limitations or otherwise barred by law, resulting from or arising out of said employment (including but not limited to: the enforceability of this agreement, the terms of this agreement; the benefits and conditions of employment, including all fringe benefits associated therewith; the relationship between the Employer and Employee and other Employees of the Employer; the working conditions while employed; the terms manner and conditions of termination (voluntary and involuntary); the Employer's compliance with any state and/or federal employment and civil rights rules, regulations and laws; the terms herein contained, including but not limited to their breadth and scope, and any term of any agreement contemporaneously entered into by the parties concerning or arising out of said employment; that the Employer and Employee mutually stipulate and agree to submit such dispute(s) to BINDING ARBITRATION, pursuant to the provisions of 9 U.S.C. Section 1, et. seq and according to the Commercial Rules of the American Arbitration Association then existing in the county where the dealer maintains its principal place of business, except as follows: (1) The arbitrator empaneled to arbitrate this matter shall be selected by the Employer, with the consent of the Employee, which consent shall not be unreasonably withheld. In the event the Employee refuses to consent to any selection made by the Employer, then the Employer shall select an arbitrator, the Employee select an arbitrator and the two arbitrators so selected shall select a third arbitrator. (2) The prepaid arbitration filing fees and all other prepaid costs of the arbitration proceeding shall be paid by the party seeking affirmative relief. THIS ARBITRATION SHALL BE IN LIEU OF ANY CIVIL LITIGATION IN ANY COURT, AND IN LIEU OF *1034 ANY TRIAL BY JURY." (Capitalization original.)
Bill Penney Motor Company employed Webb in its "cleanup shop."
On April 27, 2000, Penney, the president of Bill Penney Motor Company, allegedly struck Webb in the face when Webb refused to clean Penney's personal automobile. On August 16, 2000, Webb sued Penney for assault and battery and for the tort of outrage. Relying on the separate arbitration agreement and the arbitration provision in the employment application signed by Webb, Penney moved to compel Webb to arbitrate his claims against Penney. In support of his motion to compel arbitration, Penney submitted an affidavit by Tim Rousell, the general manager of Bill Penney Motor Company, stating, in pertinent part:
"I have personal knowledge of the information contained in this affidavit.
"2. Defendant William E. Penney, Sr. is the president and 67% owner of Bill Penney Motor Company, Inc. Bill Penney Motor Company, Inc. is a corporation organized under the laws of the State of Alabama, and is engaged in the business of buying and selling new and used automobiles, of servicing automobiles for retail sale and of selling automobile parts.
"3. Specifically, Bill Penney Motor Company, Inc. purchases new and used vehicles and automobile parts for resale from out-of-state suppliers and vendors. Bill Penney Motor Company, Inc. also sells new and used vehicles to persons and other entitles residing outside of the State of Alabama. Bill Penney Motor Company, Inc. also sells parts to persons and entities residing outside of the State of Alabama. Furthermore, Bill Penney Motor Company, Inc. advertises for potential customers outside of the State of Alabama. Bill Penney Motor Company, Inc. also maintains a web site on the World Wide Web. On this web site, customers throughout the United States may obtain online financing, schedule service, order replacement parts, as well as obtain information on current discounts and incentives.
"4. To both facilitate these transactions and its business generally, Bill Penney Motor Company, Inc., employs persons in its `clean up shop' to clean new and used automobiles sold by Bill Penney Motor Company, Inc. in the course of its business. Plaintiff David Webb was employed by Bill Penney Motor Company, Inc. in its `clean up shop.' The matters at issue in this lawsuit between David Webb and Bill Penney, Sr. occurred at the `clean up shop' at Bill Penney Motor Company, Inc., and occurred while David Webb was engaged in his employment at the `cleanup shop.'...
"5. As a condition of David Webb's employment with Bill Penney Motor Company, Inc., Webb agreed to settle any dispute arising out of his employment through binding arbitration rather than through a civil lawsuit. An arbitration agreement executed by David Webb specifically includes and provides for arbitration of all disputes `arising from or relating to ... the relationship between the Employer and Employee and other Employees of the Employer.'...
"6. In addition to the arbitration agreement signed by David Webb ..., David Webb also signed a separate arbitration agreement in connection with his application for employment at Bill Penney Motor Company, Inc.... In this arbitration agreement, David Webb agreed that as a condition of his employment with Bill Penney Motor Company, Inc., he `agree[ed] to settle any disputes arising out of his employment through *1035 binding arbitration rather than through a lawsuit....'"
Although Webb interposed several objections to Penney's motion to compel arbitration, the trial judge granted it and stayed the case "pending the completion of the arbitration process."
"A petition for the writ of mandamus [was] the appropriate means by which to challenge a trial court's order compelling arbitration." Ex parte Hood, 712 So.2d 341, 343 (Ala.1998). Compare Rule 4(d), Ala. R.App. P. (providing that on and after October 1, 2001, review of an order compelling arbitration, like review of an order denying arbitration, is by appeal). "[T]he standard of review of a trial court's ruling on a motion to compel arbitration at the instance of either party is a de novo determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review." Ex parte Roberson, 749 So.2d 441, 446 (Ala.1999).
Webb states these issues for our review:
"I. WHETHER OR NOT THE CONTRACT IN QUESTION HAS A SUBSTANTIAL EFFECT ON INTERSTATE COMMERCE.
"II. WHETHER WILLIAM PENNEY, SR. CAN ENFORCE AN ARBITRATION AGREEMENT BETWEEN BILL PENNEY MOTOR COMPANY, INC. AND DAVID WEBB WHEN WILLIAM PENNEY, SR. IS NOT A SIGNATORY TO THE ARBITRATION AGREEMENT.
"III. WHETHER THE SCOPE OF THE ARBITRATION AGREEMENT IN QUESTION SHOULD ENCOMPASS THE INTENTIONAL TORTS OF ASSAULT AND BATTERY/OUTRAGE.
"IV. WHETHER OR NOT THE ARBITRATION AGREEMENT IN QUESTION IS UNCONSCIONABLE."
Our conclusion on Webb's first issue pretermits the remaining three.
Unless a contract containing arbitration provisions, or unless a transaction evidenced by such a contract, substantially affects interstate commerce, the Federal Arbitration Act does not govern the contract and does not preempt § 8-1-41(3), Ala.Code 1975, which prohibits specific enforcement of a pre-controversy "agreement to submit a controversy to arbitration." Rogers Found. Repair, Inc. v. Powell, 748 So.2d 869, 872 (Ala.1999).
"[T]he party moving for arbitration has the burden of proving the existence of a contract containing an arbitration clause, in a transaction that substantially affects interstate commerce. See Sisters of the Visitation v. Cochran Plastering Co., 775 So.2d 759, 765 (Ala.2000). If the party moving to compel arbitration fails to make such a showing, the burden of proof does not shift to the opposing party and the motion should be denied."
Ex parte Greenstreet, Inc., 806 So.2d 1203, 1207 (Ala.2001).
"The FAA renders enforceable any `written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction,... or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal....' 9 U.S.C. § 2.... Thus, on its face, the FAA applies only to `transactions,' `contracts,' and `controversies.'

"The FAA defines `transactions' in the maritime context, as including `charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, collisions, or any other matters ... *1036 which, if the subject of controversy, would be embraced within admiralty jurisdiction.' 9 U.S.C. § 1.... The FAA focuses on the narrow concepts of acts, omissions, or agreements, not on the broader concepts on which the Bank focuses, such as the nature of the parties' businesses or the general `course of dealings between the parties.' Thus, the facts that the Bank `routinely conducts business in interstate commerce'; that Alafabco owns and uses materials `manufactured outside the state of Alabama'; and that Alafabco operates its business with funds borrowed from the Bank cannot support arbitrability of this dispute.

"Moreover, under §§ 1 and 2, the FAA applies only where the transaction affecting interstate commerce is the `subject of [the] controversy.' ...
"....
"The Bank argues that involvement of the various forms of communication recited in Campbell's affidavit, such as the United States Postal Service `and other methods of communication,' as well as the existence of federal regulations governing loan transactions and deposits in general, can support arbitrability. We disagree with this argument also.

"....
"The interstate communications services and sundry federal regulations on which the Bank seeks to rely touch this transaction so remotely and tangentially as to warrant no consideration. Holding that a transaction is subject to the FAA simply by virtue of the ordinary use of interstate communication media in its furtherance, or by Congressional regulation of some aspect of one party's business, would effectively transform every `local' transaction into a `national' one. As Sisters of the Visitation points out, such an approach is impermissible under our federal system of government. 775 So.2d at 767 (citing NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 37 (1937))."
Alafabco, Inc. v. Citizens Bank, [Ms. 1010703, August 30, 2002] ___So.2d ___, ___ (Ala.2002) (emphasis added).
The facts that Bill Penney Motor Company "purchases new and used vehicles and automobile parts for resale from out-of-state suppliers and vendors," "sells new and used vehicles to persons and other entities residing outside of the State of Alabama," "sells [automotive] parts to persons and entities residing outside of the State of Alabama," "advertises for potential customers outside of the State of Alabama," and "maintains a web site on the World Wide Web" for the use of "customers throughout the United States" do not impart to Webb's contract or transaction a substantial effect on interstate commerce. These contracts or transactions are distinct and separate from Webb's employment contract and the transactions it evidences. "Indeed, these factors are largely irrelevant to an FAA interstate-commerce analysis." Alafabco, ___ So.2d at ___.
The parties to the contract containing the arbitration provisions were an Alabama natural person, Webb, and an Alabama domiciliary corporation, Bill Penney Motor Company. The transaction evidenced by the contract was Webb's performing menial chores in a cleanup shop in Alabama. The alleged assault cannot be deemed a transaction evidenced by Webb's employment contract. Bill Penney Motor Company has not submitted any evidence that Webb's employment or chores substantially, or even detectably, affected any of the contracts or transactions between Bill Penney Motor Company and persons or entities outside Alabama.
*1037 Penney has failed to make the requisite prima facie showing of a substantial effect on interstate commerce and thus has failed to shift to Webb the burden of proving either that the contract or transaction did not substantially affect interstate commerce or that the parties did not make the contract in the first place or that some other defect or circumstance foreclosed the enforcement of the arbitration provisions. Ex parte Greenstreet, supra. Therefore, the learned trial judge should not have entered his order compelling arbitration, id., and we must issue our writ directing that the order be vacated.
WRIT ISSUED.
HOUSTON, LYONS, HARWOOD, and WOODALL, JJ., concur.
MOORE, C.J., concurs in the result.
SEE, BROWN, and STUART, JJ., dissent.
SEE, Justice (dissenting).
I respectfully dissent from the majority opinion, which grants Webb's petition for the writ of mandamus and directs the trial court to vacate its order compelling arbitration.

I.
This case involves the enforceability of an arbitration provision in an employment agreement. David Webb argues, and the majority of the Court agrees, that the Federal Arbitration Act ("the FAA") does not apply to this employment agreement because, he argues, neither the agreement nor the transaction it evidences has a substantial effect on interstate commerce. However, the United States Supreme Court, in Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 113-14, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001), held that if "there is an argument to be made that arbitration agreements in employment contracts are not covered by the [FAA], it must be premised on the language of the § 1 exclusion provision itself." That is, the FAA applies to all contracts of employment, except those contracts that involve transportation workers. Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1314 (11th Cir. 2002). Therefore, I submit that it is unnecessary in this case for the Court to reach the interstate-commerce analysis in order to determine that the FAA governs Webb's employment agreement.[2]
Even applying an interstate-commerce analysis, if it were necessary to do so, I disagree with the conclusion of the main opinion that this dispute need not be submitted to arbitration because, the opinion asserts, Bill Penney failed to submit any evidence indicating that Webb's employment in Bill Penney Motor Company's cleanup shop affected that company's interstate transactions. This Court has held that "`to prevail on an assertion of arbitrability, the moving party is required to produce some evidence which tends to establish its claim,'" Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 (Ala.1995) (opinion on application for rehearing) (quoting In re American Freight Sys., Inc., 164 B.R. 341, 345 (D.Kan.1994)), and "`has the burden of proving the existence *1038 of a contract calling for arbitration and proving that that contract involves a transaction affecting interstate commerce.'" Tefco Fin. Co. v. Green, 793 So.2d 755, 758 (Ala.2001) (quoting Ex parte Caver, 742 So.2d 168, 172 n. 4 (Ala.1999)(emphasis added)). Although the chores Webb performed in the cleanup shop were menial, Penney submitted evidence indicating that those chores were an essential step in the Company's eventual sale of new and used vehicles to persons or entities outside of Alabama. The affidavit Penney submitted in support of his motion to compel arbitration states, in part:
"3. Specifically, Bill Penney Motor Company, Inc. purchases new and used vehicles and automobile parts for resale from out-of-state suppliers and vendors. Bill Penney Motor Company, Inc. also sells new and used vehicles to persons and other entities residing outside of the State of Alabama....
"4. To both facilitate these transactions and its business generally, Bill Penney Motor Company, Inc., employs persons in its `clean up shop' to clean new and used automobiles sold by Bill Penney Motor Company, Inc. in the course of its business. Plaintiff David Webb was employed by Bill Penney Motor Company, Inc. in its `clean up shop.' ..."
(Emphasis added.)
The FAA provides in pertinent part that "a contract evidencing a transaction involving commerce ... shall be valid...." 9 U.S.C. § 2 (emphasis added). I believe that Penney's affidavit provides the requisite "some evidence which tends to establish [Penney's] claim" that Webb's employment affected interstate commerce. See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 274, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (interpreting the term "involving commerce" as the "functional equivalent" of the phrase "affecting commerce"). Therefore, Webb's employment contract is properly reached by the FAA.

II.
Having concluded that the arbitration agreement is within the reach of the FAA, I turn to the remaining issues that Webb presents on appeal.

A.
Webb argues that Penney lacks standing to compel arbitration, because Penney is not a signatory to the arbitration agreement, and that Webb's claims of assault, battery, and the tort of outrage fall outside the scope of the arbitration agreement. Both questions are properly addressed to the arbitrator for resolution.
"Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, ... so the question `who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is `clea[r] and unmistakeabl[e]' evidence that they did so." 514 U.S. at 944, 115 S.Ct. 1920.
Webb argues that Penney lacks standing to compel arbitration because Penney is not a signatory to the arbitration agreement. The arbitration agreement signed by Webb in this case states that the parties agreed to arbitrate all disputes "resulting from or arising out of [Webb's] employment (including but not limited to: the enforceability of this agreement, the terms of this agreement; ... the terms herein contained, including but not limited to their breadth and scope ...)." In Oakwood Acceptance Corp. v. Hobbs, 789 So.2d 847, 850 (Ala.2001), the arbitration agreement similarly provided that "[a]ny challenges to the validity or enforceability of *1039 this Agreement shall be determined by the arbitrator(s)." Relying on this language, this Court held that third-party standing to enforce the arbitration agreement is a question to be decided by the arbitrator.
In Ex parte Waites, 736 So.2d 550, 551 (Ala.1999), the arbitration provision stated that the parties agreed to arbitrate any disputes "resulting from or arising out of the sale transaction entered into (including but not limited to: the terms of th[e] agreement ... [and] their breadth and scope ...)." We concluded that this language expressed a clear intent of the parties to arbitrate the issue of arbitrability.
In this case, the arbitration agreement states that the parties agreed to arbitrate all disputes "resulting from or arising out of [Webb's] employment (including but not limited to: the enforceability of this agreement, the terms of this agreement; ... the terms herein contained, including but not limited to their breadth and scope...)." (Emphasis added.) This language is substantially the same as the language in the arbitration agreements in Hobbs and Waites, which this Court held evidenced a clear intention to arbitrate the question of the arbitrability of the dispute. Therefore, Penney's standing to enforce the arbitration agreement between Webb and Bill Penney Motor Company and the scope and breadth of that agreement are issues for the arbitrator, not this Court, to decide.

B.
Webb also argues that the arbitration agreement he signed is unconscionable because, under the terms of the agreement, he is responsible for paying the costs of the arbitration proceedings, but he says he cannot afford to pay those costs. Alabama contract law does not excuse a party's performance solely on the ground of financial hardship; therefore, evidence of Webb's limited financial means, without more, does not justify a finding that the arbitration agreement is unconscionable. Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 37 (Ala.1998). Moreover, I note from the trial court's order that Penney has agreed to pay the costs of the arbitration proceedings. Therefore, Webb's claim that the arbitration agreement is unconscionable simply because of his financial hardship lacks merit.

III.
This matter comes before us on a petition for the writ of mandamus. Mandamus is an extraordinary writ, and one petitioning for it must show (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court. Ex parte Breman Lake View Resort, L.P., 729 So.2d 849, 851 (Ala.1999). Based on the above, Webb has not shown a clear legal right to have the trial court vacate its order compelling arbitration; therefore, I would not issue the writ.
BROWN, J., concurs.
NOTES
[1] This petition for a writ of mandamus was filed before the May 10, 2001 amendment to Rule 4, Ala. R.App. P., effective October 1, 2001. By that amendment, an order granting or denying a motion to compel arbitration is reviewable by appeal. Because Webb appealed before October 1, 2001, we treat his appeal as a petition for a writ of mandamus, as we did in Henderson v. Superior Ins. Co., 628 So.2d 365 (Ala.1993).
[2] "[T]his Court can affirm the ruling of a trial court for any valid reason, even one not presented to or considered by the trial court." Southern Energy Homes, Inc. v. Gregor, 777 So.2d 79, 81 (Ala.2000). This long-standing principle of appellate review does not offend notions of due process and fairness because it is the appellant who has an affirmative duty of showing error upon the record. See Tucker v. Nichols, 431 So.2d 1263, 1264 (Ala.1983). Moreover, because Circuit City, supra, speaks directly to the scope and breadth of the FAA issues that the parties argued in the trial court and in their briefs on appealWebb had ample notice that Circuit City could affect this Court's disposition of his petition.