William Shaner purchased a manufactured home from H S Homes, L.L.C., on October 12, 1999. In conjunction with the purchase, Shaner executed a "Manufactured Home Retail Installment Contract and Security Agreement," which designated Green Tree Financial Corporation as the assignee of the installment contract. The installment contract contains the following arbitration agreement:
 "ARBITRATION: All disputes, claims, or controversies arising from or relating to this Agreement or the relationships which result from this Agreement, or the validity of this arbitration clause or the entire Agreement, shall be resolved by binding arbitration by one arbitrator selected by you with my consent. This arbitration agreement is made pursuant to a transaction involving *Page 983 
interstate commerce, and shall be governed by the Federal Arbitration Act, Title 9 of the United States Code. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes in court, but that they prefer to resolve their disputes through arbitration, except as provided herein. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL, EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY YOU (AS PROVIDED HEREIN). The parties agree and understand that all disputes arising under case law, statutory law and all other laws including, but not limited to, all contract, tort, and property disputes, will be subject to binding arbitration in accord with this agreement. I agree that I shall not have the right to participate as a representative or a member of any class of claimants pertaining to any claim arising from or relating to this Agreement. The parties agree and understand that the arbitrator shall have all powers provided by law and the Agreement. These powers shall include all legal and equitable remedies, including, but not limited to judicial or nonjudicial relief to enforce a security agreement relating to the collateral secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation or to foreclose on the collateral. Such judicial relief would take the form of a lawsuit. The institution and maintenance of an action for judicial relief in a court to foreclose upon any collateral, to obtain a monetary judgment including the filing of a counterclaim in a suit brought by you pursuant to this provision.
 "WAIVER OF JURY TRIAL: I HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY THAT I HAVE IN ANY SUBSEQUENT LITIGATION BETWEEN ME AND THE SELLER, OR ME AND ANY ASSIGNEE OF THE SELLER, WHERE SUCH LITIGATION ARISES OUT OF, IS RELATED TO, OR IS IN CONNECTION WITH ANY PROVISION OF THIS CONTRACT WHETHER THE CONTRACT IS ASSERTED AS THE BASIS FOR A CLAIM, COUNTERCLAIM OR CROSSCLAIM, OR A DEFENSE TO A CLAIM, COUNTERCLAIM OR CROSSCLAIM."
(Capitalization in original.) Simultaneously with the signing of the installment contract and in connection with the purchase of the manufactured home, Shaner executed a second arbitration agreement, which reads as follows:
 "All disputes, claims, or controversies arising from or relating to the Contract or the relationships which result from the Contract, or the validity of this arbitration clause or the entire Contract, shall be resolved by binding arbitration by one arbitrator selected by Assignee with consent of Buyer(s). This arbitration Contract is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1. Judgment upon the award rendered may be entered into any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes through a court but they prefer to resolve their disputes through arbitration, except as provided herein. *Page 984 
 "THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY ASSIGNEE (AS PROVIDED HEREIN).
 "The parties agree and understand that all disputes arising under case law, statutory law, and all other laws including, but not limited to, all contract, tort and property disputes, will be subject to binding arbitration [in] accord with this Contract. The parties agree and understand that the arbitrator shall have all powers provided by the law and the Contract. These powers shall include all legal and equitable remedies, including, but not limited to, money damages [and] declaratory relief. Notwithstanding anything hereunto to the contrary, Assignee retains an option to use judicial or non-judicial relief to enforce a security agreement relating to the [M]anufactured [H]ome secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation secured by the Manufactured Home or to foreclose on the Manufactured Home. Such judicial relief would take the form of a lawsuit. The institution and maintenance of an action for judicial relief in a court to foreclose upon any security agreement shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this Contract, including the filing of a counterclaim in a suit brought by Assignee pursuant to this provision."
(Capitalization in original.)
On June 4, 1999, Patrick Pritchett purchased a manufactured home from H S Homes. In connection with the purchase of the manufactured home, Pritchett executed a "Retail Installment Contract, Security Agreement, Waiver of Trial By Jury And Agreement to Arbitration or Reference or Trial By Judge Alone," which named GreenPoint Credit Corporation as the assignee/creditor. This installment contract contained an arbitration agreement that reads as follows:
 "Dispute Resolution. Any controversy or claim between or among you and me or our assignees arising out of or relating to this Contract or any agreements or instruments relating to or delivered in connection with this Contract, including any claim based on or arising from an alleged tort, shall, if requested by either you or me, be determined by arbitration, reference, or trial by a judge as provided below. A controversy involving only a single claimant, or claimants who are related or asserting claims arising from a single transaction, shall be determined by arbitration as described below.
 ". . . .
 "Arbitration. Since this Contract touches and concerns interstate commerce, an arbitration under this Contract shall be conducted in accordance with the Unites States Arbitration Act (Title 9, United States Code), notwithstanding any choice of law provision in this Contract. The Commercial Rules of the American Arbitration Association (`AAA') also shall apply. The arbitrator(s) shall follow the law and shall give effect to statutes of limitation in determining any claim. Any controversy concerning whether an issue is arbitrable shall be determined by the arbitrator(s). The award of the arbitrator(s) shall be in writing and include a statement of reasons for the award. The award shall be final. Judgment upon the award may be entered in any court having jurisdiction, *Page 985 
and no challenge to entry of judgment upon the award shall be entertained except as provided by Section 10 of the United States Arbitration Act or a upon a finding of manifest injustice."
Simultaneously with the signing of the installment contract, Pritchett signed a separate arbitration agreement identical to the stand-alone arbitration agreement signed by Shaner.
Shaner and Pritchett subsequently asserted claims of fraud, conversion, and negligence and wantonness against H S Homes. Pursuant to the terms of the stand-alone arbitration agreement, Shaner agreed on May 25, 2004, to Green Tree's selection of attorney Frank Wilson to arbitrate Shaner's claims against H S Homes. Likewise, pursuant to the terms of the stand-alone arbitration agreement executed by Pritchett, he agreed on June 15, 2004, to GreenPoint Credit's selection of attorney J. Greg Allen to arbitrate his claims against H S Homes.
On June 18, 2004, Shaner served the following demand for arbitration on H S Homes:
 "The named claimant, a party to an arbitration agreement contained in a written contract dated October 22, [sic] 1999, and providing for arbitration under the Commercial Arbitration Rules established by the American Arbitration Association, hereby demands arbitration under such rules.
 ". . . .
 "The arbitrator selected to hear this case pursuant to the arbitration agreement entered into between the parties is Frank Wilson, Esquire."
On July 8, 2004, Pritchett served the following demand for arbitration on H S Homes:
 "The named claimant, a party to an arbitration agreement contained in a written contract dated June 4, 1999, and providing for arbitration under the Commercial Arbitration Rules established by the American Arbitration Association, hereby demands arbitration under such rules.
 ". . . .
 "The arbitrator selected to hear this case pursuant to the arbitration agreement entered into between the parties is J. Greg Allen, Esquire."
Neither Shaner nor Pritchett filed his demand for arbitration with the American Arbitration Association ("AAA").
On July 1, 2004, H S Homes objected to the selection of Frank Wilson as arbitrator in Shaner's case and to Shaner's failure to file his demand for arbitration with the AAA. H S Homes argues that Shaner's failure to file his demand for arbitration with the AAA violates the arbitration agreement. Likewise, on July 28, 2004, H S Homes objected to the selection of J. Greg Allen as arbitrator in Pritchett's case and to Pritchett's failure to file his demand for arbitration with the AAA. As with Shaner, H S Homes contends that Pritchett's failure to file his demand for arbitration with the AAA violates the arbitration agreement.
Shaner and Pritchett sued H S Homes seeking a judgment declaring that the AAA shall not administer the arbitration between the parties and an injunction enjoining H S Homes from involving the AAA in the matters. H S Homes answered and counterclaimed, seeking an order determining that Shaner and Pritchett are required to submit their claims to arbitration in accordance with AAA rules and that the AAA is required to administer their arbitration claims.
On October 25, 2004, Shaner and Pritchett moved the trial court for a summary judgment seeking a determination that the *Page 986 
arbitrators were properly selected in accordance with the terms of the arbitration agreement and that the AAA is not required to administer the arbitration proceedings. On November 1, 2004, H S Homes moved the trial court for a summary judgment on the basis that Shaner and Pritchett were required to submit their claims to the AAA and that the AAA is required to administer Shaner's and Pritchett's claims.
The trial court, on November 9, 2004, entered an order granting Shaner and Pritchett's motion for a summary judgment and holding that Wilson and Allen would serve as the arbitrators in the respective cases and that the AAA shall not administer the arbitration proceedings in these cases. H S Homes filed a postjudgment motion, which the trial court denied. H S Homes appeals.
We review a summary judgment de novo. Williams v. StateFarm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that there exists no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross Blue Shield of Alabama v. Hodurski 899 So.2d 949, 952
(Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant.Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986). Once the movant makes a prima facie showing that he is entitled to a summary judgment, the burden then shifts to the nonmovant to produce "substantial evidence" creating a genuine issue of material fact. § 12-21-12, Ala. Code 1975; Bass v.SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98
(Ala. 1989). "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life AssuranceCo. of Florida, 547 So.2d 870, 871 (Ala. 1989).
We consider the dispositive issues on appeal to be whether the trial court properly interpreted and applied the parties' arbitration agreements in ordering that Wilson and Allen serve as the arbitrators in the respective arbitration proceedings and that those arbitration proceedings are not to be administered by the AAA. H S Homes argues on appeal that Shaner and Pritchett had demanded arbitration under the Commercial Arbitration Rules of the AAA and that, when parties agree to arbitrate under the AAA rules, they authorize, pursuant to Rule 2 of the Commercial Arbitration Rules, the administration of the arbitration by the AAA. H S Homes further argues that under its Commercial Arbitration Rules the AAA has the important tasks of receiving the arbitrator's disclosure statement and determining whether the arbitrator should be disqualified for grounds such as impartiality or lack of independence. Thus, H S Homes contends, the trial court's order determining that the AAA shall not administer the arbitration proceedings in these cases denies H S Homes the opportunity to have an independent body determine whether the arbitrator in each case is impartial.
"Arbitration agreements are governed by general principles of contract law." McDonald v. H S Homes, L.L.C.,853 So.2d 920, 923 (Ala. 2003). An order compelling arbitration will be reversed when it appears that the trial court failed to compel arbitration in a manner consistent with the terms of the arbitration provision. 853 So.2d at 925. Section 5 of the Federal Arbitration Act mandates that the method set forth in the arbitration agreement *Page 987 
for choosing an arbitrator be followed. Id.
In McDonald, a case factually similar to the present case, McDonald entered into a contract to purchase a manufactured home from H S Homes. At the time of the purchase, McDonald executed a retail installment contract and security agreement that named GreenPoint Credit Corporation as the assignee of the installment contract. The installment contract contained the same arbitration provision as was in the installment contract entered into by Pritchett. Simultaneously with the signing of the installment contract, McDonald executed a purchase contract with H S Homes that referenced a separate stand-alone arbitration agreement. This stand-alone arbitration agreement is identical to the stand-alone arbitration agreements signed by Shaner and Pritchett.
Subsequently, McDonald sued H S Homes, alleging various theories of recovery arising out of the purchase of the manufactured home. H S Homes moved the trial court to compel arbitration. The trial court granted the motion to compel arbitration and ordered McDonald to arbitrate her claims. McDonald moved the trial court for an order clarifying the arbitration agreement; she explained in her motion that she had signed two arbitration agreements in connection with her purchase of the manufactured home and that the parties could not agree on which agreement controlled the dispute, i.e., the installment contract, which stated that the AAA rules shall apply, or the stand-alone agreement, which provided that the arbitrator would be selected by the assignee with the consent of the buyer. The trial court entered an order concluding that the two arbitration provisions had been executed as part of a continuing transaction and should be read and construed "`as if in one form.'" 853 So.2d at 922.
Thereafter, McDonald's attorney contacted the attorney for GreenPoint Credit, the assignee under the installment contract, and, without notice to H S Homes, mutually agreed that attorney Kenneth Mendelsohn would arbitrate McDonald's claims against H S Homes. H S Homes moved the trial court to set aside as invalid the selection of Mendelsohn as arbitrator, arguing that he had not been selected pursuant to the procedures set forth in the installment contract. The trial court entered an order setting aside the selection of Mendelsohn as arbitrator and ordering that McDonald and H S Homes select an arbitrator in accordance with the Commercial Arbitration Rules of the AAA. Id.
Relying upon general principles of contract law, this Court reversed the trial court's judgment, concluding that the trial court's order required the selection of an arbitrator in a manner inconsistent with the terms of the parties' agreement to arbitrate. This Court stated:
 "First, we note that the trial court's order of October 3, 2001, specifically found that both the stand-alone arbitration agreement and the arbitration provision in the installment contract should be read together and should be construed as if combined in one document. If those agreements are read together as if contained in one `consolidated arbitration agreement,' the resulting agreement between H S and McDonald would read, in part:
 "`Any controversy or claim between or among you and me or our assignees arising out of or relating to this Contract or any agreements or instruments relating to or delivered in connection with this Contract, . . . shall *Page 988 
be determined by arbitration . . . as provided below.
 "`. . . The Commercial Rules of the AAA also shall apply.
 "`All disputes, claims, or controversies arising from or relating to the Contract or the relationships which result from the Contract, or the validity of this arbitration clause or the entire Contract shall be resolved by binding arbitration by one arbitrator selected by Assignee with consent of Buyer(s).' "Second, we note that H S and
McDonald are parties to all of the agreements at issue in this dispute; those agreements specifically identify GreenPoint Credit as the assignee.
 ". . . .
 "`. . . .'
"The procedure set forth in the Commercial Rules of the AAA for selecting an arbitrator is applicable only when the parties have not appointed an arbitrator and when the parties have not provided another method for the appointment of an arbitrator.
"In this case, the parties have established a method for appointing an arbitrator. At the time McDonald purchased the manufactured home from H S, H S and McDonald agreed as follows:
 "`All disputes, claims, or controversies arising from or relating to the Contract or the relationships which result from the Contract, or the validity of this arbitration clause or the entire Contract, shall be resolved by binding arbitration by one arbitrator selected by Assignee with consent of Buyer(s). . . .'
 "Because the parties to this dispute have provided a method for appointing an arbitrator and because Mendelsohn was appointed pursuant to that agreed-upon method, we find that McDonald has complied with the trial court's October 3, 2001, order."
853 So.2d at 924-25.
The parties in this case entered into stand-alone arbitration agreements identical to the stand-alone arbitration agreement entered into by the parties and construed by this Court inMcDonald. Reading the arbitration provisions in the retail installment contracts and the stand-alone arbitration agreements in this case together, as required byMcDonald, we conclude that, like the parties inMcDonald the parties in this case have provided amethod of selecting an arbitrator, and because Wilson and Allen were selected as arbitrators in the respective proceedings in accordance with that method, we affirm the trial court's judgment insofar as it orders that Wilson and Allen serve as arbitrators in those arbitration proceedings.
We next determine whether the trial court correctly ordered that the AAA shall not administer the arbitration proceedings in this case. "When a court construes a contract, `the clear and plain meaning of the terms of the contract are to be given effect, and the parties are presumed to have intended what the terms clearly state.'" Polaris Sales, Inc. v. HeritageImports, Inc., 879 So.2d 1129, 1133 (Ala. 2003) (quotingStrickland v. Rahaim, 549 So.2d 58, 60 (Ala. 1989)).
With regard to Pritchett, a plain reading of the arbitration provision contained in the installment contract and the stand-alone arbitration agreement signed by Pritchett clearly shows that Pritchett, H S Homes, and the assignee Green-Point Credit specifically agreed that the Commercial Arbitration Rules of the AAA "shall apply" to any arbitration proceedings arising from the purchase of the manufactured *Page 989 
home. Rule 2 of the Commercial Arbitration Rules of the AAA provide in part as follows: "When parties agree to arbitrate under these rules . . . they thereby authorize the AAA to administer the arbitration." Because Pritchett, H S Homes, and the assignee GreenPoint Credit agreed that the Commercial Arbitration Rules of the AAA shall apply to their arbitration proceeding, we conclude that arbitration between these parties is due to be administered by the AAA.
The situation concerning Shaner, however, is factually different, as shown in the arbitration provision of the installment contract quoted earlier. Whereas Pritchett's contract specifically stated that "[t]he Commercial Rules of the American Arbitration Association (`AAA') also shall apply," Shaner's installment contract contains no such provision. Although Shaner's arbitration agreement does not mention anywhere the Commercial Arbitration Rules of the AAA, Shaner's demand for arbitration expressly stated that he was a party to an arbitration agreement "providing for arbitration under the Commercial Arbitration Rules established by the American Arbitration Association," and that he "hereby demands arbitration under such rules" (emphasis supplied). Shaner's demand was identical to the demand for arbitration made on Pritchett's behalf, the same counsel making both demands. Nowhere was it argued that the phrasing of Shaner's demand was mistaken in its assertion that his underlying arbitration agreement provided for arbitration under the AAA's Commercial Arbitration Rules.
Relying upon Rule 2 of the AAA's Commercial Arbitration Rules, H S Homes argues that because Shaner demanded arbitration pursuant to those rules, he authorized the AAA to administer the arbitration proceedings. We agree. Shaner agreed to arbitrate all disputes, claims, or controversies arising out of the sales transaction, agreed to the selection of an arbitrator by the assignee (Green Tree Financial Corporation) with Shaner's consent, and made the selection (by his demand) to administer the arbitration process through the AAA. H S Homes agreed to the method of arbitration administration selected and demanded by Shaner, and Shaner is bound thereby. Accordingly, we conclude that the arbitration proceedings between Shaner, H S Homes, and the assignee Green Tree are due to be administered by the AAA.
We affirm that portion of the trial court's judgment ordering that the arbitrators appointed by the respective assignees, Wilson and Allen, are to serve as arbitrators in these arbitration proceedings, each having been selected by a method prescribed in the respective stand-alone arbitration agreements. Neither the reference in Pritchett's agreement to arbitration under the Commercial Arbitration Rules of the AAA nor the demand to proceed under those rules made by Shaner override the selection clauses of the stand-alone arbitration agreements. Although we affirm the trial court's judgment ordering Wilson and Allen to serve as arbitrators, because we also conclude that the AAA shall administer these arbitration proceedings Wilson and Allen are nevertheless subject to the disclosure requirements of the AAA and the results that flow from those requirements. Insofar as the trial court's judgment declares that the AAA shall not administer the arbitration proceedings of both Shaner and Pritchett, we reverse. We remand the case for an order consistent with this Court's opinion.
 AFFIRMED IN PAET; REVERSED IN PART; AND REMANDED. *Page 990 
NABERS, C.J., and SEE, HARWOOD, STUART, SMITH, and PARKER, JJ., concur.
LYONS and WOODALL, JJ., concur in the result.