Bowater Incorporated ("Bowater"), a defendant in an action pending in the Walker Circuit Court, appeals from an order granting its motion to compel arbitration of the disputes involved in that action, on the ground that the order impermissibly refused to follow the method for selecting the arbitrators contained in the arbitration agreement. We reverse and remand.
The plaintiffs, Lisa Zager, Page Hart, Joyce Marie Eidson, and HDJ Land Company, or their predecessors in interest, and Bowater are the lessors and lessee, respectively, under a long-term (66 years) timber lease executed on June 1, 1965 ("the lease").[1] The original lessee was Hiwassee Land Company, then a wholly owned subsidiary of Bowater Southern Paper Corporation. Through a series of intra-corporate mergers and name changes, Bowater succeeded to the interest of Hiwassee Land Company in the early 1980s. Accordingly, for more than 20 years, Bowater has occupied the status of the lessee under the lease. The plaintiffs assert in their action that they are the owners of real *Page 660 
property located in six Alabama counties, including approximately 1,832 acres in Walker County; they claim that some of the Alabama property is covered by the lease but that other portions of it are not. Bowater takes the position that it has rights of entry on all of the property. According to the complaint, Bowater and the other 10 defendants (who are, variously, timber harvesters, logging companies, forest-management specialists, and foresters) have "all conducted timber harvesting, site preparation, road building, engineering, and other forestry land management and/or related activities on the Property and have done so in a negligent and/or wanton manner or have otherwise committed waste on the property." The complaint also alleges that the defendants have trespassed on and illegally removed timber from property not covered by the lease.
The complaint was filed on November 13, 2000, and on December 15, 2000, Bowater filed its answer, stating as its first defense that "[p]laintiffs' complaint and all claims alleged therein are subject to binding arbitration pursuant to an arbitration provision contained in the lease agreement in effect between the parties," and that the action should be stayed and the plaintiffs compelled to submit their claims to arbitration. On that same day, Bowater filed its motion to stay proceedings and to compel arbitration, explaining its succession as lessee under the lease and quoting from the lease the following arbitration provision:
"13. ARBITRATION
 "13.1. In the event the parties are unable to agree with respect to any issue of fact arising under this lease in regard to their rights, duties, and liabilities hereunder, the dispute shall be submitted to arbitration. Lessee shall choose one arbitrator and Lessors shall choose another, both of whom shall be members of at least twenty (20) years standing in the Society of American Foresters. The two arbitrators shall choose a similarly qualified third member from said Society and the decision of a majority of the three arbitrators shall be final and binding and shall be adhered to immediately by both parties hereto. If the two arbitrators chosen by the parties are unable to agree upon a third, the third shall be chosen by the president of the Society from the members of such Society similarly qualified. All expenses arising from such arbitration shall be divided equally between Lessors and Lessee. In the event such Society is no longer in existence at such time, members of its successor organization, if any, shall be chosen in the same manner; otherwise, members of such organization shall be acceptable to the parties."
Bowater advised the court that it would "provide additional authority for its position herein through affidavits and a memorandum of law, all of which shall be filed shortly hereafter." Other of the defendants, although not signatories to the lease, moved to compel arbitration on the theory that the claims asserted against them were "intertwined" with the claims against Bowater. On November 20, 2001, the trial court ordered, among other things, that all defendants should "provide this Court a Memorandum Brief of all their facts in support of the Arbitration herein, along with a list of cases and citations of the Law in support of their contentions for their motion to compel in this case no later than February 1, 2002." The plaintiffs were ordered to respond with a similar memorandum by March 1, 2002. All of the motions to compel arbitration were to be heard on April 3, 2002. Bowater had already filed, on March 23, 2001, a memorandum in support of its motion to compel arbitration urging the court, for *Page 661 
the reasons recited in the memorandum, to compel "the arbitration of plaintiffs' claims in accordance with the terms of the parties' arbitration agreement." In that memorandum, Bowater again quoted the arbitration agreement and pointed out that the Federal Arbitration Act ("the FAA"), codified as Title9 U.S.C. § 1 et seq., provides in 9 U.S.C. § 4 that "the Court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement" if there has been a "failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration," and likewise provides in9 U.S.C. § 3 that the Court "shall stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." (Emphasis added by Bowater.)
On March 1, 2002, the plaintiffs filed their opposition to the various motions to compel arbitration, raising numerous objections and challenges to the proposed arbitration, including the contention that "the arbitration selection provision of the Lease is void" and "illegal, impossible or unconscionable." Specifically, the plaintiffs noted that the arbitration clause required that all of the arbitrators be "members of at least twenty (20) years standing in the Society of American Foresters" and that, according to the plaintiffs, Alabama law required arbitrators to be lawyers licensed to practice law in Alabama; they further noted that there were no 20-year members of the Society of American Foresters who were also licensed to practice law in Alabama. The plaintiffs explained their reasoning in concluding that only an Alabama lawyer could serve as an arbitrator in the case. Bowater filed a "reply memorandum" responding to the various objections and challenges raised by the plaintiffs and explaining, among other things, why Alabama law did not require that the arbitrators be lawyers.
On September 17, 2003, the trial judge entered the following order:
 "The defendants having made a motion to Compel Arbitration, which as argued in Open Court by the attorneys for the respective parties, and taken under advisement by the Court, and the Court has reviewed the briefs of the parties and now the Court proceeds to enter an Order herein:
 "There are legal, as well as, factual issues concerning the arbitrability of plaintiffs' claims, as well as, who is to arbitrate the same, and primarily, if the claim is to be submitted to binding Arbitration, does the law require the Arbitrators to be duly licensed Attorneys in Alabama or some other State? The Supreme Court of the United States held that `Arbitrators are Judges' in the case of Burchell v. Marsh, 58 U.S. 344, 349 (1854), and the Recompiled Code of Alabama, § 34-3-6, similarly defines serving as an Arbitrator as the practice of Law, and § 34-3-7, of said Alabama code, requires that an Arbitrator be a duly licensed Attorney in this State, the Alabama Constitution, Amendment 328, § 6.07 requires Judges to be duly licensed Alabama Attorneys. Consequently, upon consideration of the foregoing, the Court is of the opinion that defendant[s'] Motion to Compel Arbitration should be granted, and this Court is of the further opinion that the person or persons who should arbitrate this case, should be duly licensed Attorneys preferably in the State of Alabama, but most certainly duly licensed Attorneys in some State, and upon consideration thereof;
 IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED, *Page 662 
AND DECREED BY THIS COURT AS FOLLOWS:
 "1. That defendant[s'] Motion to Compel Arbitration be and it is hereby granted.
 "2. That the Arbitrators to be appointed by each party are to be duly licensed Attorneys.
 "3. That plaintiffs shall appoint, in writing, a duly licensed attorney, of their own choosing, to act as one of the Arbitrators in this case within a period of thirty days from the date of this Order.
 "4. That defendants shall appoint, in writing, a duly licensed attorney, of their own choosing, to act as one of the Arbitrators in this case within a period of thirty days from the date of this Order.
 "5. That after the appointment, by each party of the two Arbitrators as set out above, then both of the appointees shall meet and appoint a third duly licensed Attorney to act as the third Arbitrator in this case, said appointment to be made in writing and signed by both appointees within a period of sixty days from the date of this Order.
 "6. That in the event the two Attorneys appointed by each side fail to agree upon the appointment of a third Attorney as Arbitrator, (within the sixty day period from the date of this Order) then within the following thirty days, the Court will appoint the third Attorney to act as an Arbitrator, and to assist the other two Arbitrators in the Arbitration of this matter in accordance with the Arbitration Agreement previously agreed upon by the parties in this case.
 "7. All appointments of said Arbitrators shall be in writing, and the original appointment is to be filed in the Office of the Circuit Clerk of Walker County, Alabama, with a copy forwarded to the other party and to the Court.
 "8. That the Court hereby reserves all other matters in this case for further and future Orders."
On October 15, 2003, Bowater filed its "Motion to Alter, Amend, or Vacate a portion of the September 17, 2003, order granting arbitration," pointing out again that the FAA required that arbitration agreements be rigorously enforced "according to their terms," citing Shearson/American Express, Inc. v. McMahon,482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), and undertaking to expose as fallacious the trial judge's rationale in reaching his decision that only "duly licensed Attorneys" could serve as arbitrators in the matter. The trial judge denied that motion on October 27, 2003, and Bowater filed its notice of appeal to this Court on November 4, 2003. None of the other defendants have joined in the appeal, and the plaintiffs have not cross-appealed. The other defendants who had moved to compel arbitration filed a motion with the trial court on October 15, 2003, asking that court to stay their obligation to designate an arbitrator within 30 days of its order, because of their understanding that Bowater intended to file objections to certain portions of the order, but providing for acceptance by the court in the event a stay was denied the name of an attorney who would be their choice as an arbitrator.
 I. Eligibility and Timeliness of the Appeal
The plaintiffs have moved to dismiss the appeal based on two arguments: (1) that "the trial court granted Bowater's motion — to the letter" and "[i]t is well settled that a party cannot appeal from a favorable decision," citing Mathias v. WorldComTechnologies, Inc., 535 U.S. 682, 684, 122 S.Ct. 1780,152 L.Ed.2d 911 (2002), and Davis v. Hartford Accident IndemnityCo., 335 So.2d 688, 690 (Ala. *Page 663 
Civ.App. 1976); and (2) that the appeal was untimely.
The plaintiffs' "favorable ruling" theory is that Bowater's motion to compel arbitration contained only the "simple request" that the court enter an order "compelling Plaintiffs to submit their claims to arbitration and staying all proceedings pending the conclusion of the arbitration proceedings" and that the trial court's order "gave Bowater exactly what it asked for." We cannot agree with this analysis. As noted above, Bowater explained to the trial court in its various submissions, including its original memorandum brief and its reply brief, that it sought to have arbitration compelled "in accordance with the terms of the parties' arbitration agreement," which specifically required that the arbitrators chosen by the parties be "members of at least 20 years standing in the Society of American Foresters." In particular, before the trial court entered its order compelling arbitration, Bowater had presented extensive argument, supported by citations to federal and state statutory law and caselaw, in opposition to the plaintiffs' contention that the arbitrators had to be Alabama attorneys. The trial court's order of September 17, 2003, noting that the court had "reviewed the briefs of the parties," leaves no doubt that the court understood the positions of the parties and was simply refusing to enforce the provision of the arbitration agreement concerning the qualifications of the arbitrators, based on the court's conclusion that the arbitrators had to be duly licensed attorneys. That such a deviation from the terms of the arbitration provision would be prejudicial is clearly recognized by our caselaw: McDonald v. H S HomesL.L.C., 853 So.2d 920 (Ala. 2003), and BankAmerica HousingServs. v. Lee, 833 So.2d 609 (Ala. 2002). Therefore, Bowater's appeal is not due to be rejected as being from a "favorable" ruling.
The plaintiffs "timeliness" argument is based upon the fact that Bowater filed its notice of appeal 48 days after the trial court entered its order compelling arbitration. The plaintiffs rightly point out that the timely filing of a notice of appeal is jurisdictional (Gold Kist, Inc. v. Tedder, 580 So.2d 1321, 1323
(Ala. 1991)) and that Rule 4(a)(1), Ala. R.App. P., requires that, "[e]xcept as otherwise provided herein," a notice of appeal must be filed within 42 days "of the date of the entry of the judgment or order appealed from," unless the 42-day period is extended pursuant to Rule 77(d), Ala. R. Civ. P.
Bowater argues that the pendency of its Rule 59(e), Ala. R. Civ. P., motion to alter, amend, or vacate a portion of the September 17 order tolled the time for taking an appeal under Rule 4(a)(3), which provides, in pertinent part, that "[t]he filing of a post-judgment motion pursuant to Rules 50, 52, 55, or 59 of the Alabama Rules of Civil Procedure . . . shall suspend the running of the time for filing a notice of appeal." The plaintiffs counter that before subdivision (a)(3) comes into play, one encounters the directive in subdivision (a)(1): "For an appeal from an order granting or denying a motion to compel arbitration, see Rule 4(d)." As the plaintiffs read Rule 4, "[t]he reader is specifically and unequivocally instructed to proceed directly to Section 4(d)," effectively bypassing (a)(3); and subdivision (d), which the plaintiffs say "exclusively" sets forth the procedure for an appeal from an arbitration order, states that an appeal from an order granting or denying a motion to compel arbitration "must be taken within 42 days (6 weeks) of the date of the entry of the order," subject to any extension allowed pursuant to Rule 77(d), Ala. R. Civ. P. The plaintiffs rely on the recent holding by this Court in Ex parte TroutmanSanders, LLP, *Page 664 866 So.2d 547 (Ala. 2003), for their further argument that because an order granting arbitration must be regarded as an interlocutory order, Bowater's Rule 59(e), Ala. R. Civ. P., motion, which cannot apply to interlocutory orders, was unavailing as a tolling mechanism.
It is true that before this Court adopted Rule 4(d), effective October 1, 2001 (see this Court's order appearing at page XIV of that volume of the Alabama Reporter containing 783-788 So.2d), this Court reviewed an order compelling arbitration by entertaining a mandamus petition, but it accepted an appeal as a matter of right from an order denying arbitration. Jack IngramMotors, Inc. v. Ward, 768 So.2d 362, 365 (Ala. 1999). The Court became increasingly concerned about the disparities created by those differing standards of review, however, and invited its Standing Committee on the Alabama Rules of Appellate Procedure "to draft and propose procedures for [this Court's] adoption procedures for appellate review of orders either compelling or denying arbitration." 768 So.2d at 366. The Court suggested that "[a] new subparagraph of Rule 4(a)(1), Ala. R.App. P., treating all such orders as being appealable as of right, within a stated time period, would assure that both sides to an arbitration controversy could come to this Court subject to the same standards of review and that both sides would be bound by the same principles of finality." Id. As noted, this Court ultimately amended Rule 4(a)(1) to refer the reader to Rule 4(d) for the procedure governing an appeal from an order granting or denying a motion to compel arbitration and subsection (d) now evenhandedly states that both an order granting and an order denying a motion to compel arbitration are "appealable as a matter of right" within 42 days from date of the entry of the order. The "finality" of the order is thus assured, because failure to take an appeal from it within the 42-day time period forecloses later appellate review. Ex parte Roberson,749 So.2d 441 (Ala. 1999).
At one point, this Court reviewed orders denying or granting motions to compel arbitration by way of petition for a writ of mandamus. A.G. Edwards Sons, Inc. v. Clark, 558 So.2d 358,360 (Ala. 1990). After Congress amended the FAA to allow an appeal from a denial of a motion to compel arbitration, this Court concluded that it similarly would recognize an appeal as the proper procedure by which to challenge a denial of a motion to compel arbitration. Id. The Court acknowledged, however, that "[a]n order denying arbitration has always been considered an interlocutory order and [the amendment to the FAA] does nothing to alter the nature of the order as non-final." Id. at 361. Nonetheless, the Court deemed the 42-day period for taking an appeal prescribed by Rule 4, Ala. R.App. P., as the appropriate time limit to apply to appeals from an order denying a motion to compel arbitration. In Ex parte Roberson a plurality of this Court opined: "While the denial of a motion to compel arbitration . . . may not fit neatly within the categories of `interlocutory' and `final' orders, this Court has held . . . that such an order is appealable, but only within the 42-day time limit." 749 So.2d at 447.
In Merrill Lynch, Pierce, Fenner Smith, Inc. v. Cobb,717 So.2d 355 (Ala. 1998), we had held:
 "The trial court denied the defendants' motion to compel arbitration on December 10, 1996. The denial of a motion to compel arbitration is an appealable order, and the defendants had 42 days in which to appeal. A.G. Edwards and Sons v. Clark, 558 So.2d 358 (Ala. 1990). However, on December 27, 1996, the defendants filed a motion to *Page 665 
alter, amend, or vacate the order, pursuant to Rule 59(e), Ala.R.Civ.P., and the running of the 42-day appeal period was suspended pending the trial court's ruling on that motion. Rule 4(a)(3), Ala.R.App.P.; Alabama Farm Bureau Mut. Cas. Insurance Co. v. Boswell, 430 So.2d 426, 428 (Ala. 1983)."
717 So.2d at 356 (emphasis supplied).
The Roberson plurality noted that this Court had held in Exparte Mutual Savings Life Insurance Co., 765 So.2d 649 (Ala. 1998),
 "that an appealable order entered by a trial court is a `judgment.' Justice Houston, writing for the Court, held that Mutual Savings could appeal the grant of a new trial and stated that `Rule 54(a) . . . defines a "judgment" as including "a decree and any order from which an appeal lies."' [765] So.2d at [650]. In Mutual Savings, the Court [held] that, because § 12-22-10, Ala. Code 1975, provides for the right to appeal from a circuit court's order granting or denying a motion for new trial, such an order constitutes a `judgment,' and a timely filed `motion to reconsider' (construed as a Rule 59(e) motion to alter, to amend, or to vacate) tolls the time for appeal."
749 So.2d at 448 (emphasis added).
Ex parte Mutual Savings Life Insurance Co. is significant by analogy to our present analysis, for the following reasons: Ala. Code 1975, § 12-22-10, provides that "[e]ither party in a civil case, or a defendant in a criminal case, may appeal to the appropriate appellate court from an order granting or refusing a motion for a new trial by the circuit court." Before the predecessor to that Code section was enacted in 1891, there was no right to appeal from a ruling of the circuit court either granting or refusing to grant a new trial. Trammell v. VaneCalvert Co., 62 Ala. 301 (1878); Johnson v. State,87 Ala. 39, 6 So. 400 (1889); Walker v. State, 91 Ala. 76, 9 So. 87
(1891); and Cobb v. Malone, 92 Ala. 630, 9 So. 738 (1891). Therefore, the Code section is "the sole authorization of an appeal from judgments granting or refusing a new trial." DrennenMotor Co. v. Patrick, 225 Ala. 36, 37, 141 So. 681, 682 (1932). Such orders were accorded only interlocutory status before the statute provided a right of appeal from them. In Ex parte MutualSavings Life Insurance Co. the trial court granted the plaintiffs' motion for a new trial, pursuant to Rule 59(a), Ala. R. Civ. P. Within 30 days thereafter, the defendant filed a motion to alter, amend, or vacate, which the trial court never ruled on. Within 42 days of the 90th day following the filing of that motion, the defendant filed its notice of appeal. The Court of Civil Appeals dismissed the appeal as untimely. This Court granted certiorari review and concluded that the Court of Civil Appeals had erred in holding that the appeal was untimely.
 "As [the defendant] correctly points out, the September 23, 1996, order granting Smith a new trial was a new `judgment' within the meaning of our Rules of Civil Procedure. See Rule 54(a), which defines a `judgment' as including `a decree and any order from which an appeal lies.' See, also, § 12-22-10, which provides that `[e]ither party in a civil case . . . may appeal to the appropriate appellate court from an order granting or refusing a motion for a new trial by the circuit court.' A party may challenge an adverse judgment by filing, within 30 days of its entry, a motion to alter, amend, or vacate the judgment, pursuant to Rule 59(e). A timely filed Rule 59(e) motion suspends the running of the time for filing a notice of appeal. Rule 4(a)(3), Ala.R.App.P. An examination of [the defendant's] October 22, 1996, motion, although *Page 666 
styled as one to `reconsider,' clearly reveals that it was a Rule 59(e) motion. This Court looks to the essence of a motion, not just to its title, to determine how the motion should be treated under our Rules of Civil Procedure. Ex parte Alfa Mutual General Ins. Co., 684 So.2d 1281 (Ala. 1996). We conclude that [the defendant's] October 22, 1996, motion, being a Rule 59(e) motion, suspended the running of the time for filing a notice of appeal, until that motion was denied by operation of law after 90 days, pursuant to Rule 59.1, Ala.R.Civ.P. Because [the defendant] filed its notice of appeal within 42 days after the denial of its motion, its appeal was timely."
765 So.2d at 650.
Thus, because the statute created a right of appeal from an order granting or refusing a motion for a new trial and because Rule 54(a), Ala. R. Civ. P., defines a "judgment" as including "a decree and any order from which an appeal lies," a motion to alter, amend, or vacate made pursuant to Rule 59(e) served to toll the running of the time for appeal as to an order that, before the enactment of the statute, would not have been deemed to be final and appealable. The interaction between Rules 54(a) and 59(e), Ala. R. Civ. P., and Rule 4(a)(3), Ala. R.App. P., is therefore recognized: 54(a) provides that "`[j]udgment' as used in these rules includes a decree or any order from which anappeal lies" (emphasis supplied). Rule 59(e) provides that "[a] motion to alter, amend, or vacate the judgment shall be filed not later than thirty (30) days after entry of the judgment" (emphasis supplied). Rule 4(a)(3) provides that the timely filing of a "post-judgment motion pursuant to Rule . . . 59 [Ala. R. Civ. P.] shall suspend the running of the time for filing a notice of appeal" (emphasis supplied). In Troutman Sanders, we held:
 "By its express terms, Rule 59(e) applies only where there is a `judgment.' That term is specifically defined in Ala. R. Civ. P. 54(a) as `a decree and any order from which an appeal lies.' (Emphasis added.) Rule 59 does not apply to interlocutory orders, because such orders remain `within the breast of the court.'"
866 So.2d at 549-50. As noted, an order granting or denying arbitration is no longer interlocutory in the sense that it remains "within the breast of the court" subject to revision at any time before final judgment, because it is now established that unless an appeal is timely taken from the order, the order is final.
As the plaintiffs properly note in their brief to this Court, this Court has declared that it is its duty "to notice the filing date and dismiss the appeal upon [its] own motion when the notice of appeal is not filed with the trial court within the prescribed time." Stewart v. Younger, 375 So.2d 428, 428 (Ala. 1979). This Court more recently stated that "`[i]t is the duty of this Court to take notice of the filing date of an appeal and, if finding the appeal to be untimely, to dismiss it ex mero motu.'" Bagleyv. Mazda Motor Corp., 864 So.2d 301, 317 (Ala. 2003) (quotingLewis v. State, 463 So.2d 154, 155 (Ala. 1985)). Further, "the construction of rules of court are for the court which promulgated them." Alabama Public Serv. Comm'n v. RedwingCarriers, Inc., 281 Ala. 111, 115, 199 So.2d 653, 656 (1967). See also Southeastern Meats of Pelham, Inc. v. City ofBirmingham, 895 So. 909 (Ala. 2004). Accordingly, it is instructive to consider this Court's implicit recognition of the appeals filed in the following cases as timely:
In McDonald v. H S Homes, supra, comparing the dates of events stated in the *Page 667 
opinion and consulting the record as to other pertinent dates, we find that the appeal in that case, from an order directing the parties to select an arbitrator in a manner inconsistent with the terms of the arbitration provision, would have been one day late (i.e., filed on the 43d day after that order) but for the intervening filing and denial by the aggrieved party, later the appellant, of a Rule 59(e) motion asking the trial court to alter, amend, or vacate that order.
Likewise, in Anderson v. Ashby, 873 So.2d 168 (Ala. 2003), the Court denied the defendants' motion to compel arbitration on January 22, 2002, and on February 20, 2002, the defendants moved, pursuant to Rule 59(e), to alter, amend, or vacate that order. The trial court denied that motion on May 8, 2002, and the subsequent appeal was accepted as timely, which it would not have been but for the tolling effect of the intervening Rule 59(e) motion.
We hold that Bowater's Rule 59(e) motion to alter, amend, or vacate that portion of the trial court's September 17, 2003, order requiring that the arbitrators be duly licensed attorneys served, under Rule 4(a)(3), Ala. R.App. P., to suspend the running of the time for filing a notice of appeal from that order. Because, under Rule 4(d) Bowater was entitled to appeal the trial court's order "as a matter of right," the order was due recognition as a "judgment" under Rule 54(a), Ala. R. Civ. P., and Rule 59(e) is operative with respect to a "judgment." Therefore, Bowater's appeal was timely and the motion to dismiss that appeal is denied.
 II. The Merits of the Appeal
Section 3 of the FAA provides that, when a party to pending litigation successfully moves to compel arbitration, the trial court shall stay the proceeding "until such arbitration has been had in accordance with the terms of the agreement." Section 4 of the FAA likewise provides, in a situation where there is no pending litigation and a party desiring to compel arbitration petitions a court "for an order directing that such arbitration proceed in the manner provided for in [the] agreement," that "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." Section 5 provides that "[i]f in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed. . . ."
 "Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, see Mitsubishi [Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614], at 628 [(1985)], so too may they specify by contract the rules under which that arbitration will be conducted. . . . By permitting the courts to `rigorously enforce' such agreements according to their terms, see [Dean Witter Reynolds Inc. v.] Byrd, [470 U.S. 213], at 221 [(1985)], we give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind . . . the FAA."
Volt Info. Sciences, Inc. v. Board of Trustees of LelandStanford Junior Univ., 489 U.S. 468, 479, 109 S.Ct. 1248,103 L.Ed.2d 488 (1989).
 "Because `arbitration is a matter of contract,' AT T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986), parties may determine by contract the method under which arbitrators for their disputes will be appointed, Universal Reinsurance *Page 668 Corp. v. Allstate Ins. Co., 16 F.3d 125, 128 (7th Cir.199[3]); Szuts v. Dean Witter Reynolds, Inc., 931 F.2d 830, 831 (11th Cir. 1991); Avis Rent A Car System, Inc. v. Garage Employees Union, 791 F.2d 22, 24 (2d Cir. 1986); ATSA of California, Inc. v. Continental Ins. Co., 754 F.2d 1394, 1395-96 (9th Cir. 1985) (amending original opinion reported at 702 F.2d 172, 175-76 (9th Cir. 1983)). In fact, the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, expressly states in section 5 that if the parties have provided in their contract `a method of naming or appointing an arbitrator or arbitrators . . ., such method shall be followed.' 9 U.S.C. § 5."
Cargill Rice, Inc. v. Empresa Nicaraguense Dealimentos Basicos,25 F.3d 223, 225 (4th Cir. 1994).
It has been held in some cases that an award entered by arbitrators who were selected by a method that did not conform to the method provided in the arbitration clause must be vacated.
 "Arbitration is a matter of contract. AT T Tech., Inc. v. Communications Workers of America, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Thus, `[t]he power and authority of arbitrators in an arbitration proceeding is dependent on the provisions under which the arbitrators were appointed.' Szuts v. Dean Witter Reynolds, Inc., 931 F.2d 830, 831
(11th Cir. 1991). Parties to an arbitration agreement may determine by contract the method for appointment of arbitrators. The FAA expressly provides that where a method for appointment is set out in the arbitration agreement, the agreed upon method of appointment `shall be followed.' 9 U.S.C. § 5.
 "Several courts, relying on § 5, have determined that `[a]rbitration awards made by arbitrators not appointed under the method provided in the parties' contract must be vacated.' Cargill Rice, Inc. v. Empresa Nicaraguense Dealimentos Basicos, 25 F.3d 223, 226 (4th Cir. 1994); see also, Avis Rent A Car Sys., Inc. v. Garage Emp. Union, Local 272, 791 F.2d 22, 25 (2d Cir. 1986) (`Courts generally enforce [selection clauses] strictly, vacating awards entered by arbitrators whose qualifications or method of appointment fail to conform to arbitration clauses.'); R.J. O'Brien Assoc., Inc. v. Pipkin, 64 F.3d 257, 263 (7th Cir. 1995) (`[I]n order to enforce an arbitration award, the arbitrator must be chosen in conformance with the procedure specified in the parties' agreement to arbitrate.'). However, `a "trivial departure" from the parties' agreement 
may not bar enforcement of an award.' R.J. O'Brien, 64 F.3d at 263."
Brook v. Peak Int'l, Ltd., 294 F.3d 668, 672-73 (5th Cir. 2002).
This Court has recognized the right of a party to an arbitration agreement to require that the method for selecting the arbitrator or arbitrators set forth in the arbitration agreement be followed and has reversed trial court orders that changed the contractually prescribed method of selecting the arbitrator. Ex parte Cappaert Manufactured Homes, 822 So.2d 385
(Ala. 2001); BankAmerica Housing Servs. v. Lee, 833 So.2d 609
(Ala. 2002); Ex parte Southern United Fire Ins. Co.,843 So.2d 151 (Ala. 2002); Northcom, Ltd. v. James, 848 So.2d 242 (Ala. 2002); and McDonald v. H S Homes, LLC, 853 So.2d 920 (Ala. 2003).
 "When a trial court compels arbitration, it must do so in a manner consistent with the terms of the arbitration provision. See Ex parte Cappaert Manufactured Homes, 822 So.2d 385, 387 (Ala. 2001) (`[section] 5 [of the Federal *Page 669 
Arbitration Act] mandates that the method set forth in the arbitration agreement be followed'); Southern Energy Homes Retail Corp. v. McCool, 814 So.2d 845 (Ala. 2001) (trial court directed to vacate its order because it failed to compel arbitration in a manner consistent with the terms of the agreement between the parties). . . . A trial court's order compelling arbitration that changes the terms of the arbitration provision will be reversed when
 "`it appears that the trial court, although it ordered the parties to arbitrate, failed to compel arbitration in a manner consistent with the terms of [the] arbitration provision.'
"McCool, 814 So.2d at 849."
BankAmerica, 833 So.2d at 618.
"The trial court erred in ordering the parties to commence arbitration in a manner that conflicted with the provisions of the arbitration agreement." Northcom, 848 So.2d at 247-48.
"Because the trial court's . . . order directs the parties to select an arbitrator in a manner that is inconsistent with the terms of the parties' agreement to arbitrate, we reverse that order." McDonald, 853 So.2d at 925.
Despite those holdings, the plaintiffs argue that "this Court does not have the authority to disturb the arbitration process" with respect to the restriction on the eligibility of the arbitrators imposed by the trial court, citing Southern UnitedFire Insurance Co. v. Howard, 775 So.2d 156 (Ala. 2000). InHoward, the nonmovant argued that the arbitration provision at issue was unenforceable because of the many details it left unaddressed, including the fact that it "does not provide for the qualifications of the arbitrators." 775 So.2d at 163. This Court held that those details represented matters of "procedural arbitrability" that were for the arbitrator to decide. Unlike the arbitration provision in Howard, the arbitration provision in this case does provide for the qualifications of the arbitrators, leaving nothing for the arbitrator to decide in that regard as a matter of "procedural arbitrability." Also, the arbitration clause in Howard specifically provided that "all questions, disputes and controversies of any nature whatsoever related to the enforceability, validity, scope [or] interpretation of . . . this arbitration clause," 775 So.2d at 159 n. 2, were to be submitted to the arbitrator. The arbitration agreement in the lease does not contain a similar provision referring the issue of arbitrability to the arbitrators.
The plaintiffs argue that this case presents an "issue of first impression throughout the United States at both the state and federal levels," with respect to these questions: "[W]hen there are multiple parties `on one side of the table,' i.e., multiple defendants, must they act in unison in selecting an arbitrator? Is their collective act determined by majority vote? Is it determined by unanimous vote?" We do not agree that this case presents those questions. The "blind spot" in the plaintiffs' analysis is reflected by their subsequent statement that "[t]he arbitration agreement states that each side of the dispute will select one arbitrator and then those two arbitrators will pick a third." (Emphasis supplied.) (Plaintiffs' brief, p. 46.) What the arbitration agreement actually provides is that the "Lessee shall chose one arbitrator and Lessors shall chose another. . . ." Thus, the lease does not give "one side of the table," i.e., Bowater, as lessee, and the rest of the defendants, as nonsignators seeking to intertwine with Bowater's right to compel arbitration, a collective right that must be exercised by the group as a whole. The lease does not envision the participation of any parties in the selection process *Page 670 
other than the "Lessee" and the "Lessors." Bowater, as the successor lessee, is contractually accorded the sole "vote" on its "side of the table," and if the nonsignatory defendants wish to participate in the arbitration, they are obliged to accept the arbitrator chosen by Bowater, the arbitrator chosen by the lessors, and the arbitrator chosen by those two arbitrators.
Finally, we cannot agree with the proposition, originally proposed by the plaintiffs in their opposition to the motions to compel arbitration, then adopted by the trial judge in its order compelling arbitration, and now urged by the plaintiffs in their appellees' brief, that arbitrators in the State of Alabama must be duly licensed attorneys. The plaintiffs argument in this regard is a sophism, relying on a series of invalid premises.
The plaintiffs rely, in part, on a statement from the 1854 opinion of the United States Supreme Court in Burchell v.Marsh, 58 U.S. (17 How.) 344, 349, 15 L.Ed. 96 (1854), that they take out of context. In reversing the judgment of the lower court that had set aside an award rendered by three arbitrators chosen by the parties, the Supreme Court stated: "Arbitrators are judges chosen by the parties to decide the matters submitted to them, finally and without appeal. As a mode of settling disputes, it should receive every encouragement from courts of equity." We do not, as the plaintiffs do, take this statement, literally, to represent a declaration by the United States Supreme Court that arbitrators are "judges" for all intents and purposes. Clearly, the three arbitrators in Burchell were not judges; it is doubtful they were even lawyers, given the Court's comment in the opinion that in entrusting the dispute to the arbitrators "the parties have agreed to trust the discretion and judgment of their neighbors acquainted with them, and their relative standing and credit." 58 U.S. (17 How.) at 351, 15 L.Ed. 96. Further, as the appellees acknowledge in their brief, Justice Black, joined by Justices Douglas and Stewart, dissented in Prima Paint Corp. v.Flood Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801,18 L.Ed.2d 1270 (1967), lamenting that under the ruling of the main opinion "the arbitrators who the Court holds are to adjudicate the legal validity of the contract need not even be lawyers, and in all probability will be nonlawyers, wholly unqualified to decide legal issues, and even if qualified to apply the law, not bound to do so." 388 U.S. at 407, 87 S.Ct. 1801. Thus, it cannot be accepted that the United States Supreme Court requires that arbitrators be "judges" in the technical sense.
Building on that false premise, however, the plaintiffs argue that § 6.07 of Amendment No. 328 to the Alabama Constitution of 1901 requires that judges "be licensed to practice law in the state." Section 6.07 actually states:
 "Judges of the supreme court, court of appeals, circuit court and district court shall be licensed to practice law in this State and have such other qualifications as the legislature may prescribe. Judges of the probate court shall have such qualifications as may be provided by law."
Section 12-13-31, Ala. Code 1975, provides the qualifications of a probate judge:
 "A probate judge must be a citizen of the state and must have resided in the county for which he is elected or appointed for one year preceding the election or appointment."
Clearly, a probate judge does not have to be licensed to practice law in this state. Therefore, we cannot agree with the plaintiffs that § 6.07 generically and across-the-board requires that "judges" be licensed attorneys. *Page 671 
The plaintiffs' next premise is that Ala. Code 1975, § 34-3-6(a) and (b)(4), requires that arbitrators be licensed Alabama lawyers. That portion of § 34-3-6 reads as follows:
 "(a) Only such persons as are regularly licensed have authority to practice law.
 (b) For the purposes of this chapter, the practice of law is defined as follows:
"Whoever,
". . . .
 "(4) As a vocation, enforces, secures, settles, adjusts or compromises defaulted, controverted or disputed accounts, claims or demands between persons with neither of whom he is in privity or in the relation of employer and employee in the ordinary sense;
"is practicing law."
The plaintiffs reason that because the United States Supreme Court in Burchell referred to arbitration as "a mode of settling disputes," an arbitrator, because he or she "settles . . . defaulted, controverted or disputed accounts, claims or demands," and does so "as a vocation," is engaged in the practice of law. A person's vocation, however, is his or her "regular calling or business; one's occupation or profession." Black'sLaw Dictionary (8th ed. 2004). It has been defined as "[t]he work in which a person is regularly employed." Merriam-Webster'sCollegiate Dictionary (11th ed. 2003). Therefore, if for no other reason, a member of the Society of American Foresters who agreed to accept appointment as an arbitrator in this case but who was not a lawyer and who did not engage in arbitration "as a vocation" would not be barred by § 34-3-6(a) and (b). There is no suggestion in the record that any member of the society arbitrates disputes "as a vocation." The record contains a roster of "Society of American Foresters' members active 20 years or more," listing the names of more 3,000 eligible individuals nationwide, 184 of whom reside in Alabama.
Accordingly, we reverse the trial court's order of September 17, 2003, to the extent that it required "[t]hat the arbitrators to be appointed by each party are to be duly licensed Attorneys" and omitted the requirement that the arbitrators be members of at least 20 years' standing in the Society of American Foresters, and we remand this case for the trial court to enter a revised order compelling arbitration consistent with the provisions of the arbitration agreement.
MOTION TO DISMISS APPEAL DENIED; REVERSED AND REMANDED.
NABERS, C.J., and SEE, BROWN, and STUART, JJ., concur.
[1] The original lessors were Donald H. Cornish, his wife Helen M. Cornish, Joyce Marie Eidson, and her husband, Charles Eidson, individually and as partners doing business as H.D.J. Land Company; and Helen M. Cornish, as trustee for Joyce Marie Eidson under a 1958 trust agreement. HDJ Land Company (the periods have apparently been dropped from the company name) and Joyce Marie Eidson are plaintiffs in the pending action. Charles Eidson, Donald H. Cornish, and Helen M. Cornish are deceased. Plaintiffs Lisa Zager and Page Hart are the daughters of Joyce Marie Eidson and have become "partners of HDJ Land Company or owners of a beneficial interest in HDJ Land Company."