Rel: March 7, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

_____

## SC-2024-0264
_____

**DocRx, Inc.; DocRx Dispensing, Inc.; DocRx Labs, Inc.; ClaimPay, Inc.; Rx Transmit, LLC; Brian Ward; Jennifer Ward; Nick Branigan; ServRx, Inc., f/k/a Workers Compensation Rx Solutions, Inc.; and Worker's Compensation Rx Solutions, P.C.**

v.

**Piedmont Comprehensive Pain Management Group, LLC**

**Appeal from Mobile Circuit Court
(CV-22-901045)**

SELLERS, Justice.

DocRx, Inc.; DocRx Dispensing, Inc.; DocRx Labs, Inc.; ClaimPay, Inc.; Rx Transmit, LLC; Brian Ward; Jennifer Ward; Nick Branigan; ServRx, Inc., f/k/a Workers Compensation Rx Solutions, Inc.; and Worker's Compensation Rx Solutions, P.C. ("the defendants"), appeal from an order of the Mobile Circuit Court lifting a stay it had entered contemporaneously with an order that had granted the defendants' motion to compel arbitration of claims brought against them by Piedmont Comprehensive Pain Management Group, LLC ("Piedmont"). We reverse the trial court's order lifting the stay.

Piedmont is in the business of providing pain-management care to patients through Piedmont's physicians. Defendant DocRx Dispensing, Inc. ("DRD"), provided billing and collection services to Piedmont in connection with Piedmont's medication-dispensing program. Pursuant to the parties' business arrangement, DRD would collect payments from insurance companies for medications that Piedmont dispensed to its patients and would keep a portion of the collected funds as compensation for DRD's services.

In 2022, Piedmont sued the defendants, alleging breach of contract against DRD and unjust enrichment and various tort-based claims

2

against DRD and the other the defendants. Not all counts were alleged against all defendants, but, broadly speaking, Piedmont accused the defendants of improperly depriving Piedmont of funds it allegedly was owed for dispensing medications.[1]

With its complaint, Piedmont submitted an April 2017 "Administrative and Claims Services Agreement" ("the April 2017 agreement"), which called for DRD to provide billing and collection services in connection with pain-management treatment at Piedmont's office in Anderson, South Carolina. Piedmont alleged in its complaint that DRD had breached that agreement. The April 2017 agreement was signed by a representative of Piedmont but not by a representative of DRD. Nevertheless, the contracting parties did, for some time, perform under the April 2017 agreement. Piedmont asserted that DRD is bound by the April 2017 agreement.

The April 2017 agreement contained an arbitration clause requiring arbitration of all claims "arising out of, or by reason of," the

---

[1]The written agreements that have been produced in this action identify the parties to those agreements as Piedmont and DRD. The other defendants are not identified as parties to the agreements, but Piedmont alleges that they played parts in the deprivation of fees supposedly owed to Piedmont.

3

April 2017 agreement "or any of the transactions contemplated [by the April 2017 agreement]." Accordingly, the defendants moved the trial court to compel Piedmont to arbitrate its claims before the American Health Lawyers Association. The trial court granted that motion on August 31, 2022, and entered a stay of this action pending arbitration. There was no appeal filed from the decision to compel arbitration.

During discovery in the arbitration proceedings, the defendants located and produced another "Administrative and Claims Services Agreement," which was dated August 21, 2017 ("the August 2017 agreement"). While the earlier April 2017 agreement referred to services provided in connection with patient care at Piedmont's Anderson, South Carolina, office, the August 2017 agreement referred to services provided in connection with patient care at Piedmont's office in Greenville, South Carolina. The August 2017 agreement contained the same arbitration clause that was contained in the April 2017 agreement. It also contained the signatures of a representative of both Piedmont and DRD. Other than the office location, the agreements are virtually identical. During the arbitration proceedings, Piedmont produced a large amount of

4

documentation relating to services that had been provided in connection with patient care at the Greenville office.

At some point, it became apparent that the parties could not locate a version of the April 2017 agreement that had been executed by DRD. When that circumstance became clear, rather than stipulating or otherwise acknowledging that the April 2017 agreement was valid and binding, the defendants filed an amended answer in the arbitration proceedings denying that they were bound by the terms of the April 2017 agreement.

After the defendants amended their answer, Piedmont requested that the arbitrator remand the matter to the trial court. Piedmont reasoned that the defendants had improperly induced the trial court to send the matter to arbitration without an enforceable contract (i.e., the April 2017 agreement). In response, the defendants argued, among other things, that Piedmont could not seek to enforce the April 2017 agreement without also being bound by its arbitration clause.

In response to Piedmont's request, the arbitrator entered an order outlining the parties' positions and concluding as follows:

> "Federal law requires arbitration of claims encompassed by an arbitration clause that is part of a binding contract.

5

However, pursuant to Alabama law, whether a valid contract was actually formed and entered is a determination to be made by a Court. When a party is seeking to enforce an arbitration clause, the initial question of whether a valid contract exists between the parties is to be decided by a trial court, not an arbitrator. J.C. Bradford & Co., L.L.C. v. Vick, 837 So. 2d 271, (Ala. 2002); citing Lee v. YES of Russellville, Inc., 784 So. 2d 1022 (Ala. 2000). If the underlying agreement which contains the arbitration clause is not valid and enforceable as [the defendants] assert, there is no basis for jurisdiction in the arbitration proceeding.

"The underlying assertions occurred in the Circuit Court of Mobile, County, Alabama in case number CV-2022-901045. The Arbitrator does not believe the [American Health Lawyers Association] Rules or applicable law permit him to directly remand a proceeding to a state Court as requested by [Piedmont]. However, in its Order Granting Motion To Compel Arbitration, the Circuit Court of Mobile County, Alabama stayed the litigation but retained jurisdiction over case number CV-2022-901045. [Piedmont] is authorized to assert in that Court and case the matters and issues it complained of in this Motion. This arbitration is stayed pending further order of the Arbitrator, which may include status review, administrative actions or an order dismissing this action."

On November 17, 2023, Piedmont filed a motion requesting that the trial court lift the stay that had been entered pending arbitration, asserting that the defendants could not insist on arbitration while simultaneously denying the existence of the April 2017 agreement. The defendants filed a response in opposition in which they argued that Piedmont could not seek the benefits of the April 2017 agreement while

6

also avoiding its arbitration clause. The defendants also stressed that Piedmont appeared to be seeking damages related to services provided pursuant to the fully executed August 2017 agreement, which contains the same arbitration clause that is contained in the April 2017 agreement. Later, the defendants filed a supplemental response in which they asserted that "any legal claims relating to the Greenville clinic are governed by the August 2017 Agreement and must be determined exclusively by the Arbitrator." The trial court granted Piedmont's motion and lifted the stay. The trial court subsequently denied the defendants' motion to reconsider, and the defendants appealed. See Rule 4(d), Ala. R. App. P. (allowing an appeal from orders granting or denying motions to compel arbitration); Norvell v. Parkhurst, 261 So. 3d 300, 305 (Ala. 2017) (holding that a trial court's order lifting a stay of an action pending arbitration was appealable under Rule 4(d)).[2]

This Court applies a de novo standard of review when considering an order denying a request to compel arbitration. STV One Nineteen Senior Living, LLC v. Boyd, 258 So. 3d 322, 324 (Ala. 2018). The party

---

[2]Piedmont filed a motion to dismiss the defendants' appeal, arguing that the trial court's order was not appealable under Rule 4(d). That motion was denied by an order of the Clerk of this Court.

seeking to compel arbitration has the burden to demonstrate the existence of an arbitration agreement evidencing a transaction involving interstate commerce. Id. If the party seeking arbitration meets that burden, the party opposing arbitration must then demonstrate that the arbitration agreement is invalid or otherwise does not apply to the parties' dispute. Id. It is undisputed that the agreements referenced in this case involve interstate commerce.[3]

The defendants argue that claims based on services provided under the August 2017 agreement, which undisputedly was signed by representatives of both DRD and Piedmont, clearly must be arbitrated. Piedmont's complaint referenced only the April 2017 agreement, which refers to services provided in connection with patient care at Piedmont's Anderson, South Carolina, clinic, and Piedmont attached that agreement to its complaint in the trial court. Piedmont made no clear attempt in its

---

[3]In its earlier order granting the defendants' motion to compel arbitration, the trial court sent the entire action to arbitration despite the fact that the only defendant expressly identified in the relevant agreements as a party to those agreements is DRD. The parties, however, do not clearly raise as an issue on appeal whether the other defendants may enforce the arbitration clauses. The trial court also sent all of Piedmont's causes of action, including its tort-based claims, to arbitration. The parties also do not clearly raise as an issue whether all of Piedmont's causes of action should be arbitrated.

complaint to base its claims on any other agreement. It was not until discovery in the arbitration proceedings, when Piedmont produced thousands of documents pertaining to reimbursement claims made in connection with care provided at Piedmont's Greenville, South Carolina, clinic, that Piedmont signaled that it is most likely seeking damages related to the August 2017 agreement. We agree with the defendants that, to the extent that Piedmont raises claims "arising out of, or by reason of," that agreement, "or any of the transactions contemplated [by that agreement]," those claims are subject to arbitration.[4]

As for claims based on services provided pursuant to the April 2017 agreement, in their initial brief to this Court, the defendants point to precedent indicating that a party cannot seek the benefits of a contract

_____

[4]Piedmont asserts that the defendants have denied the existence of any governing agreement by denying the allegations of a particular paragraph of Piedmont's statement of claim that was filed in the arbitration proceedings. Thus, Piedmont asserts, the defendants cannot seek to enforce the arbitration clause in the August 2017 agreement while allegedly denying that agreement's existence. But the relevant paragraph in the statement of claim does not reference the August 2017 agreement; it refers only to a single "Administrative and Claims Services Agreement." And the statement of claim later defines that agreement as the April 2017 agreement. Moreover, the defendants concede in their brief to this Court that the August 2017 agreement exists and governs claims based on services provided pursuant to that agreement.

9

and, at the same time, avoid an arbitration clause contained therein. See, e.g., Bowen v. Security Pest Control, Inc., 879 So. 2d 1139, 1143 (Ala. 2003) ("A plaintiff cannot seek the benefits of a contract but at the same time avoid the arbitration provision in the contract."); Infiniti of Mobile, Inc. v. Office, 727 So. 2d 42, 48 (Ala. 1999) (holding that a party who based fraud and breach-of-warranty claims on a contract between her husband and Infiniti of Mobile, Inc., could not avoid the arbitration provision in the contract). According to the defendants, Piedmont relies on the April 2017 agreement in support of its theories of liability in this action. Thus, they assert, Piedmont cannot claim the benefits of that agreement while also avoiding the arbitration clause contained therein. As noted, Piedmont takes the position that the defendants cannot seek to enforce the arbitration clause in the April 2017 agreement and, simultaneously, insist that that agreement essentially does not exist because it was not signed by a representative of DRD. Piedmont asserts in its brief to this Court that it is the defendants that "are picking and choosing the terms of the contract they want to be valid, not Piedmont." In anticipation of that argument, the defendants assert in their initial brief to this Court that "[t]he lack of evidence of a valid [April 2017

10

agreement] will cause Piedmont's Breach of Contract claim to fail and prevent the arbitrator from awarding contractual damages; it does not[,] however, destroy jurisdiction in the arbitration proceedings." There is, however, no discussion of authority in the defendants' brief that would support the proposition that a party may seek to enforce an arbitration clause contained in the same agreement that the party simultaneously claims does not exist at all.

Regardless of these arguments, the trial court ordered arbitration of the claims that are based on the April 2017 agreement in an order entered in August 2022, and there was no appeal from that order. "'An order granting a motion to compel arbitration is a final judgment, Bowater, Inc. v. Zager, 901 So. 2d 658, 667 (Ala. 2004), and

> "failure to take an appeal from it within the 42-day time period forecloses later appellate review." 901 So. 2d at 664.' Alabama Psychiatric Servs., P.C. v. Lazenby, 292 So. 3d 295, 299 (Ala. 2019)."

McMurray Contracting, LLC v. Hardy, 392 So. 3d 709, 713 (Ala. 2023). This Court has also indicated that a trial court loses jurisdiction to modify or set aside a final judgment 30 days after its entry. Ex parte Chmielewski, 280 So. 3d 386, 389 (Ala. 2018). It was not until more than a year after the trial court compelled arbitration that Piedmont sought

11

to have the trial court's order set aside. Because the time for review of the trial court's final order compelling arbitration of claims based on the April 2017 agreement had long expired, the trial court had no jurisdiction to entertain Piedmont's request to lift the stay and, effectively, set aside the arbitration order. "It is well settled in Alabama that a judgment or order entered by a trial court without subject-matter jurisdiction is void." Ex parte Hare, Wynn, Newell & Newton, LLP, [Ms. SC-2023-0908, May 24, 2024] ___ So. 3d ___, ___ (Ala. 2024).[5]

To the extent that the trial court's order lifting the stay effectively set aside its earlier order compelling arbitration of claims that are based on the April 2017 agreement, that order is void. To the extent the order refused to compel arbitration of claims "arising out of, or by reason of," the August 2017 agreement "or any of the transactions contemplated [by that agreement]," we conclude that the trial court erred. Accordingly, we

---

[5]There has been no argument in this case that the trial court could have properly set aside its order compelling arbitration under Rule 60(b), Ala. R. Civ. P., which allows courts to grant relief from judgments in certain limited circumstances, none of which would appear to apply here.

reverse the trial court's order and remand the matter for further proceedings consistent with this opinion.[6]

REVERSED AND REMANDED.

Stewart, C.J., and Wise, Mendheim, Cook, and McCool, JJ., concur.

Shaw, J., concurs in part and concurs in the result, with opinion.

Mitchell, J., concurs in part and concurs in the result, with opinion.

Bryan, J., concurs in the result.

---

[6]We do not express an opinion on the validity of the defendants' argument that the April 2017 agreement does not exist even though it appears that the parties engaged in significant transactions pursuant to that agreement, on whether the defendants clearly suggested the agreement's validity in seeking to compel arbitration of claims based on that agreement, or on any other rationale that might support the conclusion that the agreement is valid.

SHAW, Justice (concurring in part and concurring in the result).

I concur with the analysis of the main opinion holding that the trial court had no jurisdiction to lift its stay of the underlying action pending its arbitration or to set aside any order compelling arbitration under the April 2017 agreement.  As to the whether any arbitration provision in the August 2017 agreement is due to be enforced, I express no opinion.  I see no jurisdiction by the trial court, in considering the motion to lift the stay, to separately address it.

MITCHELL, Justice (concurring in part and concurring in the result).

I agree that the Mobile Circuit Court's decision to lift the arbitral stay must be reversed for lack of jurisdiction. Because no party filed a timely postjudgment motion, the circuit court's order compelling arbitration became final after 30 days. See McMurray Contracting, LLC v. Hardy, 392 So. 3d 709, 713 (Ala. 2023). And by compelling arbitration, the circuit court necessarily decided that there was a valid agreement to arbitrate, even if it did not explicitly say so in its order. Thus, the circuit court acted without jurisdiction when, over a year later, it lifted the stay and allowed a challenge to the arbitration agreement.

But I take no position as to the majority opinion's analysis of the August 2017 agreement. As the majority opinion notes, the complaint was based only on the April 2017 agreement, not the August 2017 agreement. Consequently, when the circuit court compelled arbitration, it did so only for claims arising out of the April 2017 agreement. And when the circuit court erroneously lifted the stay over a year later, it similarly did so only for claims related to the April 2017 agreement. We therefore cannot address arbitration under the August 2017 agreement because the circuit court never ruled on that issue.

15